## SAMUEL RODMAN v. AMOS ZILLEY, DAVID S. ZILLEY, and ELIZABETH BLAKELEY.

On a bill by the vendor, for specific performance of a contract for the sale of land at auction; where it appears that the vendee was induced to make the purchase by the fraudulent contrivance and management of the vendor, he can have no remedy to enforce the contract in a court of equity: but where the charge of fraud or collusion is not established against the complainant, the relief he seeks cannot be rightfully withheld on that ground.

So the vendee being intoxicated at the time, and not in a situation to judge correctly, or act with prudence, will not avail him to avoid the contract, unless he can show that it was procured by the contrivance of the vendor, or that an unfair or improper advantage was taken of his situation.

Courts of equity seldom interfere to set aside contracts of sale, on the ground of inadequacy of price; they leave the parties to their legal remedies. But when called on to enforce a contract, they examine into the consideration to be given, its fairness and equality, and all the circumstances connected

with it; and if any thing manifestly inequitable appear in that part of the transaction, they will never lend their power to carry the contract into execution.

There can be no objection to a contract made with a man in the habit of buying and selling, and transacting his own business, because he was illiterate, unless he has been grossly deceived or fraudulently imposed on.

The rule of this court is, that *time* may be dispensed with, if not of the essence of the contract. In this case, the time of the delivery of the deed was not held to be of the essence of the contract.

A party may waive his technical right in this respect, and the waiver need not be direct, or in writing, but may be inferred from circumstances.

So a prior incumbrance existing on the property, and known to the purchaser, is not a bar to a specific performance : but it may be referred to a master to enquire as to the amount of the incumbrance and state of the title, that the court may judge and take such order as may be expedient.

waiver of a contract for the sale of real estate may be by parol, but it should be express, and of such a character as to leave no reasonable doubt as to the intentions of the parties.

Under conditions of a vendue "for the sale of the property of S. R." it is no objection to the execution of the contract, that a part instead of the whole of a lot of land was sold; provided it was made known what part was to be sold at the time it was set up.

THE bill in this case is to enforce the specific performance of an agreement for the purchase and sale of lands in the county of Burlington.

In 1826, A. Zilley had a mortgage and execution against Rodman, for about one thousand dollars. The mortgage covered fifty-five acres of land in the possession of Rodman. The execution was levied on the same property, and was in the hands of William N. Shinn, the sheriff of the county of Burlington, who was about to sell and make the money on the execution. Matters being thus situated, it was agreed, in order to avoid the exposure of a sheriff's sale, that the property should be sold at public sale by Rodman himself, the defendant in the execution, and that the money raised by the sale should be appropriated to the discharge of the execution in the sheriff's hands. The arrangement was made between the parties to the suit, with the consent of the sheriff. The sale took place on the 4th day of January, 1827 ; and thirty-five acres of said land, being set up and publicly exposed to sale, were purchased by Amos Zilley, the plaintiff in the execution, for thirty dollars seventy-five cents per acre. A

Ju'y. 1831.

Rodman
v.
Zilley et al.

memorandum in writing, acknowledging the purchase, was immediately executed by Zilley. According to the conditions of the sale, the deed was to be executed on or before the 13th day of January, at which time one third part of the purchase money was to be paid, and for the residue approved notes were to be given, payable at three and six months. The complainant, alleging the tender of a deed to Zilley, the purchaser, complains that he refuses to comply with his engagement, and seeks the aid of this court to enforce the contract.

The defendant, Zilley, admits the material facts, as stated by the complainant; but alleges, as a justification for his refusal to comply with the conditions of sale and complete the purchase, that he was induced to make the bid and sign the conditions by the encouragement and persuasion of the complainant, and the assurance that he need not keep the property unless he chose; and that at the time he was considerably excited and intoxicated, and not in a condition to judge correctly; and that he is now fully aware that the property is not worth the money he bid for it. He denies also that the complainant tendered him a deed on the 13th day of January, or at any other time, in a lawful and proper manner, and that he has done any thing to waive a strict and legal compliance with the conditions on the part of the complainant. He further sets up, that the premises are subject to a mortgage made to James Hunter Sterling, which is prior to the defendant's mortgage.

Issue was joined, and witnesses were examined. The cause was heard upon the bill, answer and proofs, the substance of which appear in the opinion of the court. The case was argued by

*Ch. Kinsey*, for the complainant;

*G. D. Wall*, for the defendants.

THE CHANCELLOR. Let us examine these several matters, and see how far they are supported by the evidence, so as to be available to the defendant.

1. Was the defendant induced to make this purchase by the

contrivance and management of the complainant ? for if this be the case, the complainant can have no remedy in a court of equity.

It appears somewhat singular that Zilley, having an execution on all the property of Rodman, which was an ample security for his money, should consent to purchase thirty-five acres of land, being only part of the real estate, for a full price, when it is evident he was not in want of property of that kind, and that it must prove to him rather an incumbrance than a benefit. But, however singular it may be, I do not find any sufficient evidence to make out against the complainant the charge of fraudulent procurement. It appears Zilley attended the sale, and probably at the request of Rodman. But if the property was to be sold by Rodman himself, when it was known that Zilley had an execution upon it for a considerable amount, it was certainly proper that Zilley should be present, to show that he approved of the proceedings. There is some evidence, not very satisfactory however, going to show that he was requested not only to attend, but to bid at the sale; but it was for the purpose of making the property bring a fair price, not to palm it upon him at an exorbitant rate, and thus take advantage improperly of an act of kindness.

It was alleged that some of the bidders at the sale, especially Philip Richardson, were induced to attend and bid at the instance of the complainant, and with a view of entrapping the defendant. Richardson, on his examination, expressly denies that Rodman used any persuasion or improper means to procure his bid. There is a discrepancy in the testimony of this witness upon another point, that renders it proper to receive his evidence with some caution. Yet as there is no direct testimony to prove any collusion between Rodman and any of the bidders at the sale, the evidence may be of some use to repel any presumption that may arise from circumstances. I do not find this allegation supported in point of fact.

After a careful examination of the evidence on both sides, I have not been able to satisfy myself that the charge of fraud or collusion is established against the complainant, and therefore the remedy sought by him cannot rightfully be withheld from him on that ground.

2. A second ground of defence is, that the defendant was intoxicated and not in a situation to judge correctly or act with prudence.

The most important evidence in favour of this allegation is the statement of Rodman himself, made to Wills, when he went to get him to run out the land. He then told Wills that Zilley was a "little groggy at the vendue," and bid quite smartly.  On the other hand, Rogers, the crier, says, that Zilley was not disordered in his mind or rendered incompetent by the use of liquor. Sheriff Shinn says, he considered Zilley to be sober at the time of the sale.  Richardson says, he did not discover him to be drunk.  Daniel Williams testifies, that he saw Zilley after the sale, and on the same day, and that he appeared to be perfectly sober ; and further, that he never saw him drunk.  James H. Sterling, who was present when Zilley signed the conditions of sale, says, he has no recollection of seeing him intoxicated at that time.  And it is to be remarked also, that Zilley, in all the conversations had with different persons after the sale, and which are detailed in the evidence, makes no mention of the circumstance.

But if the fact were made out, it could not avail the defendant, unless he can show that it was procured by the contrivance of the complainant, or that an unfair and improper advantage was taken of his situation.  As to the first, there is no pretence for it whatever ; and as to the last, it is difficult to arrive at such a conclusion, against the testimony of respectable witnesses, that the sale was a fair sale, and the property worth the amount bid for it, or very nearly so ; and when we see, that shortly after the sale, the defendant was offered within a trifle of the amount he gave for it, and refused the offer.  This defence can be of no avail to the defendant.

3. Another ground is, that the property is not worth the money.

Courts of equity seldom interfere to set aside sales and contracts, on the ground of inadequacy of price.  They leave the parties to their legal remedies.  But when they are called on for extraordinary aid to enforce a contract, they take the liberty to examine into the consideration to be given, its fairness and equa-

lity, and all the circumstances connected with it. And if any thing manifestly inequitable appears in that part of the transac-action, they will never lend their power to carry the contract into execution. See the case of *Seymour* v. *Delancy*, 6 *John. C.* 222, in which all the authorities are reviewed.

What are the facts in this case, as to the value of the property ? The defendant bid for it thirty dollars seventy-five cents. There were several persons who bid for the property. Cogswell bid, as he says, three or four times; his last bid was thirty dollars twenty-five cents. Richardson bid thirty dollars fifty cents, but from his evidence I think it may well be doubted whether he intended to be bound by the bid. The defendant, then, agreed to give fifty cents more on the acre than Cogswell. There is no evidence to show that Cogswell was unable to pay, or that his bid was a sham bid in any sense of the word. On the contrary, he says that his bid was a real bid, made in earnest; and in the absence of proof to the contrary, it must be taken to be so, and that he considered the land worth the amount of his bid. Independently of this, Cogswell says in his evidence, that he considered the property cheap at thirty dollars seventy-five cents per acre, at the time of sale, and also at the time of his examination. Richardson says he considered the land to be worth thirty dollars per acre. David Williams testifies, that Zilley, some little time after the sale, wanted him to buy the property, and offered to sell it to him, stating that the deed was in Wills's hands, and that he was fully authorized to sell. He came a second time, and appeared very anxious. Witness told him he did not want the property at any price, but nevertheless offered him twenty-seven or twenty-eight dollars per acre, he cannot say which.

It is evident from these facts, that the sum agreed by the defendant to be given for the property, was not far from the real value. Another circumstance on this part of the case has had great influence on my mind; and that is, that although the defendant has made loud complaints in court as to the extravagance of the price, he has not called a single witness to testify to the value of the land. Surely it would have been very easy to prove the charge, if it were true.

4. Again it is said, the defendant was illiterate, and not capable of taking care of his rights.

He certainly was an illiterate man, but he was in the habit of transacting his own business; of buying and selling, not only personal, but real property. He is represented to have been a close, contracted man in his dealings, and a tight man to make a bargain with. There can be no objection to a contract made with such a man, unless he has been grossly deceived or fraudulently imposed on, which does not appear to have been the case.

5. But it is objected that the deed was not tendered in time, and it is insisted that, under the circumstances of the case, the defendant is at liberty to avail himself of every defence, and hold the opposite party to strict rule.

There is no foundation for this objection. According to the conditions of sale, the deed was to be made by the 13th of January, when one third of the purchase money was to be paid, and the residue secured. Now it is in evidence, that the deed was actually made and executed, at the house of Wills, on the 11th of January, and that it was done in the presence of Zilley. The situation of the parties was such as to render a literal compliance with the conditions altogether unnecessary, if not impossible. Zilley was the purchaser, and he was also the creditor. There was no necessity for his paying one third of the purchase money to Rodman, or giving his notes for the balance. It appears that the deed was left in the hands of Wills, and the purchase money was to be settled on the execution. Sheriff Shinn says, he met Rodman and Zilley afterwards on the road, and spoke to them about this business. They told him they were going to Mount Holly to settle it; and Rodman said, in the presence of Zilley at the same time, that he would leave the sheriff's fees in the hands of Mr. Neale, who was the attorney. It further appears, that Zilley, after the execution of the deed, considered the deed as his, and also the property, and spoke of them as such. Shortly after the execution of the deed he went to David Williams, as before stated, to sell him the land. Williams asked him if he had got the deed executed: he said he had, and that it was left in Wills's hands, and that he, Zilley, had full power to sell the property. He afterwards told Williams that he did not get the deed

from Wills because he was not able to pay for the execution of
it, and that Wills intended to keep it until he got his fees. Rich-
ardson says, that some weeks after the sale, (and after the time
when the deed should have been tendered,) Zilley came to his
house to see if he could not sell him the property, as he had bid
for it at the sale. Witness declined taking it. Zilley then said
he was going to the factory, or Griffith's mills, to sell it to some
man there; and if he did not sell it to him, he should get rails
and fence it, and live on it himself. He also told Williams, that
if he could not get the price he had given for the land, he meant
to fence it, and build upon it, and live there himself. The deed
was tendered some time in January, say a fortnight after the
time mentioned in the article. It was tendered by Mr. Neale, as
counsel for Rodman, after it was supposed that some difficulty
might be made about completing the contract. Even then, Zilley
did not object to the deed; expressed no dissatisfaction that it
was not tendered in time. On the contrary, he told Mr. Neale,
he was willing to take the property, but was not prepared to do
so at that time. He promised to go, on the following Tuesday,
to the office of Daniel Wills, and receive the deed, and settle the
whole matter. This was agreed to by both parties.

In this case, the *time* of the performance, was not of the es-
sence of the contract; and the rule of this court is, that in de-
creeing the specific performance of an agreement, time may be
dispensed with, if not of the essence of the contract : 7 *Ves. jr.*
273; 4 *Bro. C. C.* 329; 12 *Ves.* 326; 5 *Cranch*, 262; and the
case of *Hepburn and Dundas* v. *Dunlap & Co.*, 1 *Wheat.*
204, *in notis.* The court, then, may dispense with the time,
and it will do it to promote the ends of justice. But independently
of this, the whole evidence shows a waiver of the formality of a
tender on the part of Zilley, and he cannot now resort to it for
the purpose of defeating the plaintiff's claim. There can be no
doubt that a party may waive his technical right in this respect;
and I think there can be as little doubt that such waiver was
actually made. It need not be direct, or in writing; but may be
justly inferred from circumstances that would not have taken
place without it.

6. Another objection is, that there is a prior mortgage on the

property, belonging to J. H. Sterling. This point was not pressed at the argument. There is no evidence of the amount of the mortgage. It was stated to be very small, and the statement not denied : and it is proved that the defendant knew of it, and knew that it was prior to his mortgage and judgment. If desired, it may be referred to a master to make the necessary inquiry, as to the amount of the incumbrance, and state of the title, so as the court may judge of them and take such order in relation to them as may be deemed expedient.

7. There is one matter of defence, which was not set up in the answer, but strenuously urged at the hearing, viz. that the contract was waived.

The testimony of Samuel J. Read was relied on to show a parol waiver. I think it fails to do so. Read was the counsel of Zilley in the judgment and execution. Rodman and Zilley were at Mount Holly, and went to Read for the purpose of making a settlement, as he supposed ; probably it was the time that Shinn saw them, when on their way to Mount Holly to settle the busines, as they stated. In the conversation which took place, Read observed that he thought Rodman had done wrong, and that it was a shame to take advantage of such a poor, ignorant man as Zilley. He further observed to Rodman, that if " Richardson was a real bidder, Amos Zilley had better pay the additional twenty-five cents per acre, and let Richardson have the land ; which Zilley agreed to do. Rodman said, if Zilley would give up the land, he would not ask him to lose any thing ; which Zilley agreed to do. Rodman then said, he would go right away and let Richardson have it." If I understand the conversation, the meaning of Rodman was not to release Zilley so as to lose the sale of the property, but to lose the extra. bid of Zilley, so that Richardson might take the property at his bid. He was willing to lose the twenty-five cents on the acre, if Zilley would agree that Richardson should take it ; and this being agreed on, Rodman went immediately to see if Richardson would take it, at his bid. But Richardson did not take it, and thus the matter ended. The waiver of a contract may be by parol, but it should be express, and of such a character as to leave no reasonable doubt as to the intention of the parties.

As to the waiver in writing set up by the defendant, the facts are these. There was due from Zilley to Elizabeth Blakely, one of the defendants, the sum of two hundred dollars. To secure this, Zilley had assigned to Blakely the judgment against Rodman. Having now become the purchaser of a part of Rodman's property, the consideration for which was to extinguish the judgment, he was desirous of procuring the two hundred dollars to pay off Blakely. When he offered to sell to Williams, he said he wanted to make up two hundred dollars "on account of some writings in somebody's hands." On the 13th February, 1827, about five weeks after the sale, Rodman entered into a written agreement, whereby he undertook to let Zilley have money enough to pay off this claim to Blakely, and Zilley agreed to let Rodman have a mortgage on the thirty-five acres which he, Zilley, had purchased.

So far from being a waiver, this appears to me to be an express recognition of the contract by both parties. This instrument is under seal, and executed in the presence of two witnesses, and cannot be mistaken. If it had been set up as evidence of fraud on the part of the complainant, there might have been some weight in the argument; but it certainly cannot prove a waiver.

8. But lastly, the defendant says the contract is defective, and cannot be enforced: that the articles purported to be articles for the sale of the whole property, whereas only thirty-five acres were sold. The article commences as follows: "Conditions of the vendue, the property of Samuel Rodman, held this 4th day of January, 1827. The highest bidder to be the purchasar," &c. It does not state whether it was real or personal property that was about to be sold, or whether it was the whole or only a part; but the property to be sold was the property of Samuel Rodman. It is clear, however, that it was land only that was sold, and that only thirty-five acres were set up; and there is no pretence in the evidence for even a supposition, that Zilley did not know what he was buying. No complaint of this kind is made at the time of the sale, or at the time of the survey of the land, or at any other time, so far as the facts are exhibited.

42

It is not necessary to go into further details. The conclusion of my mind is, that the complainant is entitled to the relief prayed for. I have endeavoured to examine this case with care and attention; and I was induced to do it the rather, because the result to which I have arrived is variant from my first impressions. There are difficulties in it, I admit, and there may be some disadvantage to the defendant in decreeing a specific performance. But this is to be expected in a greater or less degree in every case of this description. Very few defendants would be brought into this court with a view to compel a specific performance of contracts, if it were not that they supposed such performance would be in some way disadvantageous. If I could have found a safe resting place for the belief that this was a sham auction, and that an actual imposition was practiced on Zilley, who was a man of rather inferior intellect, I should not have hesitated a moment in denying the relief sought. But seeing, from the evidence, that he was a man in the habit of dealing for himself; that he consented to the sale of the property in this way to satisfy the execution; that the sale was an open sale, and in the presence of very respectable persons, who testify that it was a perfectly fair one; that he signed the agreement on the back of the articles, and expressed himself satisfied; that he afterwards repeatedly spoke of the purchase without any reservation, or any charge of unfairness, except perhaps in one instance. And seeing also, that as much as a week after the sale, when he had had time for reflection and advice, if necessary, he took the surveyor down to the land, assisted in running it out, was present at the execution of the deed, made no kind of objections to any part of the proceedings, but promised to settle the matter according to the contract; and seeing, too, that he considered and represented the property as his own, and the deed as made and executed to him; that he endeavoured to sell the property, and dealt with it as owner; and lastly, not being satisfied that the contract is unconsciencious or unjust, or that the enforcement of it will be contrary to what is termed the morality of the court, I feel constrained to decree for the complainant.

The assignment of the judgment to Blakely, or the general

assignment to Daniel S. Zilley, cannot alter the principle of the case. The right of Blakely will be protected by the court; and the assignee, taking only the rights of Zilley, cannot be injured.