JESSE LYNN MAHAFFEY et al., respondents,

*v.*

MORRIS A. SARSHIK, appellant.

[Decided May 16th, 1927.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, who filed the following opinion:

"I am unable to see how a decree of specific performance can be refused on any view that may be taken of the case. The defendant agreed absolutely to purchase this property for the specified amount, and it is the duty of a court of equity to enforce that agreement unless there is some reason why it should not be enforced. Of course, no testimony can be admitted of an agreement between the parties other than the written agreement, that is perfectly well known by everybody, but there is no doubt of the right of any party to a written contract to so demean himself as to deny himself the privilege of objecting to a condition that his own conduct has brought about. If it be true, as is claimed, that the purchaser of this property, after the agreement had been executed, led the sellers to believe that it wouldn't be necessary on the day of settlement for them to deliver complete physical possession of this property, but that if defendant then did not want the hospital as a going concern the sellers could have a reasonable time, referred to as sixty or ninety days, to remove the patients after the time for setlement; if it be true, I say, that the purchaser led the sellers to believe that, obviously, he couldn't refuse to take the property because the patients were still in the property at the time agreed upon to settle. It isn't a question of making a new agreement or a question of enforcing a new agreement, or a question of the modification of the written agreement, it is purely a question of equitable estoppel. If one leads me to believe

that I shall be privileged to do a certain thing he · can't afterwards equitably object that I did it, or if he leads me to believe that I need not do a certain thing he can't object that I didn't do it. So, if it be true that the purchaser of this property led the sellers to believe that it wouldn't be necessary for them to close down the hospital business and remove the patients from the building before the day for settlement, he can't equitably come before the court at this time and justify his refusal to take the property on the ground that they didn't do what he had told them it wouldn't be necessary for them to do.

"Now, what is the evidence touching that fact? The defendant herein, the purchaser of the property, says that he didn't make that sort of an agreement, that he didn't tell his vendors that they could have sixty or ninety days in which to remove the patients after the time fixed for settlement. But, on the other hand, the testimony is overwhelming to the contrary. Now, the defendant may be ever so sincere and ever so honest in his recollection of what he told them; he may at this time believe that what he told them was confined to the possibility of some patient being in the hospital who couldn't be promptly removed. I say he may be ever so sincere and honest in his recollection of that fact, but the testimony before this court by the mouths of several other witnesses is overwhelmingly to the contrary. Several of those witnesses unite in the uniform statement that he said that possession need not be delivered, so far as the patients were concerned, at the time of settlement, that he said that he didn't know what sort of purchaser he might find, whether he would find a purchaser who would wish a going concern in the nature of a hospital or whether he might find a purchaser who would like an early possession, and that they could go ahead with their hospital business and that they could have what was a reasonable time thereafter to remove the patients, which reasonable time was understood in the discussion to be sixty or ninety days. Now, with this overwhelming amount of affirmative testimony to that effect it is impossible for me to find, or for any jury to find, as a fact that that is not true. It is, under all the rules

of evidence, an established fact in this case that the defendant did lead the owners of this property to believe that they wouldn't be required to vacate the property of its patients at the time of settlement and could have a reasonable time, which was estimated to be sixty or ninety days after that time, for that purpose. The matter of adjustment, or the method of adjustment, in the meantime for the delay and delivering possession wasn't definitely fixed or determined upon, according to the testimony, but it was understood that the property would be taken over as a going concern, with the patients in it, or it would be equitably determined between the parties what a proper and appropriate rent would be for whatever time was necessary after the day of settlement to rid the hospital of its patients. Now, those are the facts of the case as the testimony overwhelmingly establishes them, and under the circumstances it is not in the power of defendant, by reason of the well-known rule of equitable estoppel, to come here and make as a defense for non-performance the claim that his vendors failed to do the very thing he led them to believe they need not do.

"But there is to my mind even a broader view to be taken of this case, which necessarily leads to a decree for specific performance. It is well established that where time is not the essence of a contract for the sale of real estate, the mere circumstance that the seller may not be able to deliver possession on the day fixed for settlement, or may not be able to make a perfect title on that day, will not deny the seller the right to enforce his contract if within a reasonable time he can do so—that is, complete his title or complete his delivery of possession. A purchaser is bound to submit to a reasonable delay. He can, if the contract is not performed by the seller on the very day, make time the essence of the contract by the process of notice, but, in the absence of that, time will not be deemed the essence of the contract. Again, the purchaser may not have the money on the day fixed for its payment, but the law does not close down on him and deny him all rights because by some misfortune he doesn't have the money to pay for the property at the time agreed upon. The law will allow him a reasonable time to get his

money to pay for the property after the time named in the contract, and will permit him to enforce the contract against the seller, if he wishes to do so, and compel delivery of the deed by raising the money at a subsequent time. I cannot accept the suggestion of defendant's counsel that the extension of time for the performance of this contract made time its essence. I know of no such doctrine recognized in this state. This extension of time was made at the request of the defendant and was no more than a postponement, and measurably shows that on the day of settlement there should have been a further postponement of settlement, given by the defendant, and giving to the sellers an appropriate time to vacate the hospital of its patients and equipment. Indeed, when the postponement of the contractual time for settlement was made at the request of defendant the hospital was being regularly operated as theretofore, and no suggestion was made by defendant indicating his disapproval of that or in any way suggesting that on the postponed day he would prefer to have the building vacated. So, I can see no theory on which there can be based a successful defense to this suit. The defendant agreed to buy the property and to pay for it. It was his solemn engagement to do so, and now it is the duty of the court to compel him to live up to the agreement. The mere inability of the complainants to deliver possession on the day specified isn't a defense. They were entitled to a reasonable time afterward, without any agreement, to remove the patients. It might have embarrassed the defendant because he had found another purchaser, but if he had a valid agreement with that purchaser, a properly drawn agreement, he could have held the parties with whom he had made the contract for the resale. It is significant that no agreement for sale by defendant to another person has been produced.

"I will advise a decree for specific performance pursuant to the prayer of the bill.

"Mr. Richards—There is a side branch to this matter. Yesterday a week ago we had served a petition and a notice upon counsel for an application here before your honor to restrain an action at law to recover the purchase-money in

*101 N. J. Eq.*                    Mahaffey *v.* Sarshik.

this matter, and I assume that can go as part of the same decree.

"The Court—It cannot, of course, be refused now, it has got to go, and I don't see why it shouldn't be made a part of the decree. When the decree is prepared, if counsel for the defense wishes to be heard touching its form, I will hear him.

"Mr. Kisselman—Will your honor fix a time when possession is to be delivered; we are certainly entitled to possession.

"The Court—It can be done in the decree, as far as that goes. Counsel can confer together touching that, and I will make the decree accordingly. If no adjustment is made between counsel I can fix the time.

"Mr. Kisselman—I should like to have it done immediately.

"The Court—The same time as the testimony, sixty or ninety days.

"Mr. Richards—Shall we make it sixty?

"The Court—Make it ninety days for the maximum and sixty days——

"Mr. Richards—We would prefer ninety.

"The Court—Ninety days then."

*Messrs. French & Richards,* for the respondents.

*Mr. Carl Kisselman,* for the appellant.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Leaming.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 13.

*For reversal*—None.