NATHAN FLEISCHER, COMPLAINANT–APPELLANT, v. JAMES DRUG STORES, INC., MAX EDLIN AND LOUIS GARAWITZ, DEFENDANTS–RESPONDENTS.

Argued October 11, 1948—Decided November 22, 1948.

142

*Mr. Harry Kay* argued the cause for complainant-appellant.

*Mr. Bernard Freedman* argued the cause for defendant-respondent, James Drug Stores, Inc.

*Mr. Charles Danzig* argued the cause for defendants-respondents, Max Edlin and Louis Garawitz (*Mr. Richard J. Congleton* and *Mr. Charles W. Kappes, Jr.* on the brief; *Messrs. Riker, Emery & Danzig,* attorneys).

The opinion of the court was delivered by

HEHER, J. The case is here under *Article XI, section IV, paragraph* 8 of the *Constitution of* 1947 and *chapter* 367 of the *Pamphlet Laws of* 1948.

The suit is for specific performance and for discovery and an accounting and damages.

The learned Vice Chancellor dismissed the bill upon these grounds: that specific performance will not be decreed where "the contract or duties to be performed are continuous;" that even where performance by the defendant "does not present great difficulties of superintendence," specific performance will be denied "if performance by the complainant cannot be assured;" and that here equity "could not enforce 'cooperation' by complainant or aggressive selling of defendant's merchandise, etc." Complainant was remitted to his action at law for damages. The principle of the case of *Danforth v. Philadelphia & Cape May Short Line Ry. Co.,* 30 *N. J. Eq.* 12 *(Ch.* 1878*)* was invoked. Thus we are brought to a consideration of the contract and the case made by the bill.

The contract is essentially cooperative, designed to place the participating operators of retail pharmacies on a competitive level with the "chain" pharmacies, by means of the price advantages and discounts secured through selective bulk purchases of merchandise by a corporation organized for the common benefit, the use under corporate direction of promotional and advertising skills, store supervision and proved merchandising techniques, and the practice in other respects of sound retail economy.

According to the bill, complainant on September 21, 1939 purchased from defendant Max Edlin a retail pharmacy established at 261 Franklin Avenue, in Nutley, and has ever since conducted a retail drug business there. Shortly after the purchase of the business, complainant entered into a contract with defendant James Drug Stores, Inc., the corporation created to serve the common trade interests of the retail druggists who should join the enterprise, whereby complainant undertook to "become affiliated" with the corporation as a "James Cut-Rate Retail Druggist" and to enroll as "a J. D. S. member" for the further-

ance of the common "plan in the State of New Jersey," and, to that end, "to buy James merchandise * * * in sufficient quantities to be recognized as a James Cut-Rate Drug Store, for the purpose of co-operation therewith, and also such other merchandise made available by the James Drug Stores, Inc. for that purpose; * * * to dispose of and not continue any other competitive line or agency plan carried by" him; and to pay a "monthly fee" of $13. until the termination of the contract. Complainant also agreed to become a stockholder of the corporation, "at its option," subject to the corporation's right to "repurchase" the stock "at the termination of" his "membership for any reason whatsoever and at the price originally paid or credited to" him "for the stock." The "J. D. S. Plan" was made available to "independent retail druggists" only; "Corporate Chains," "Department Stores" and "Cut-Rate Medicine Stores," as therein defined, were declared ineligible.

It was further provided that applications "for enrollment as J. D. S. members" be submitted to and approved by the corporate directorate. It was required that, by "signs and window transfers authorized by the J. D. S., or by such other means as may be approved," complainant's establishment be identified in the public mind as a "J. D. S." store. "Cooperation" was enjoined upon the "members" in the carrying out of "buying, advertising and merchandising programs, * * * as well as featuring such merchandise at prices" fixed from time to time by the corporation's directors, in order "to create demand and acceptance for such merchandise by the public;" and it was declared essential also that the "members" purchase "such merchandise and equipment from the J. D. S. or through the medium of the J. D. S." In the event of the bankruptcy of "a J. D. S. member, * * * membership shall automatically be cancelled;" and should a member be convicted of crime "or be guilty of conduct which in the opinion of the directors is detrimental to the reputation or principles of the J. D. S., or adverse to the objects of the said Plan, and if such conduct is not corrected after notice to the member, the membership may, at the option of the Board, be cancelled according to such rules set down by them, or by their by-laws or resolutions." Non-

cooperation in the carrying out of the "Plan" is also a specific ground for cancellation of membership; and, in the event of cancellation or the member's voluntary resignation, all "J. D. S. signs and identifying characteristics" shall be removed from the store, and there shall be a forfeiture of all rebates, surcharges, overcharges or profits, "accrued" but not yet "declared." The member's rights are not assignable without the consent of the directors; such "rights * * * shall continue only during the period in which the said Company continues in business, providing all other paragraphs have been complied with by the said member." The member was given "the privilege of resigning at any time," on 60 days' notice; and again the corporation reserved the right to cancel the membership, on notice to the member, if, in the directors' judgment, the member did not "properly cooperate in carrying out the said plan." It is alleged that complainant earned "dividends and profits and credit for surcharges as a participating member of the corporation," and "for a portion thereof" the corporation issued to complainant 50 shares of its capital stock, but "compelled complainant to assign the stock to it "in trust;" and recovery of the stock is sought.

The bill charges that on December 29, 1947, when its annual gross business totalled $30,000, the corporation discontinued the service and thereafter refused performance, notwithstanding full performance on complainant's part; that the service was terminated without a hearing on notice to complainant; and that the stoppage of the service was the object and result of a conspiracy between the corporation and the defendants Edlin and Garawitz, the former a "member" and director and the latter a "member" of the corporation, after complainant had refused to resell his business to Edlin, the former owner, and Edlin and Garawitz had established "a rival pharmacy" nearby, at 349 Franklin Avenue, Nutley, and had contracted with the corporation for the service theretofore provided to complainant. It is also alleged that complainant had procured the "bulk of his drugs and sundry articles" from the corporation at a reduction in cost ranging from 10% to 11.7% and thereby also had a source of supply of merchandise not obtainable elsewhere.

In a word, it is charged that by reason of the corporation's breach of the contract and complainant's "expulsion from the corporation," induced by the "malicious and unjustifiable interference" of Edlin and Garawitz, complainant has been deprived "of the use of the benefits common to all members of the corporation," and thus "a valuable property right" derived from the corporation's "cooperative plan."

## I.

 The bill states a case for specific performance. The right to the equitable remedy of specific performance turns upon the existence of an adequate remedy at law; and the adequacy of the legal remedy of compensation depends upon the facts and circumstances of the particular case, wherefore the factual allegations of the bill have been set forth at length. There is no definitive formula automatically resolving every case. Equity's jurisdiction to award specific performance of a contract is exercisable unless the remedy at law is adequate and complete and as efficient as the remedy of specific enforcement. *Mantell v. International Plastic Harmonica Corporation,* 141 *N. J. Eq. 379 (E. & A.* 1947). In the language of Lord Selborne, the ruling principle is that specific performance will be given if it will "do more perfect and complete justice." *Wilson v. Northampton and Banbury Junction Railway Co., L. R. 9 Ch. A. C.* 279, 284 (1874). The "foundation and measure" of the jurisdiction, said Professor Pomeroy, "is the desire to do justice, which the legal remedy would fail to give"— complete justice to both parties "with respect to all the judicial relations growing out of the contract between them." *Pomeroy's Equity Jurisprudence (5th ed.* 1941) *section* 1401.

 The jurisdiction grounded in this principle is invocable in two classes of cases: (1) Where the subject-matter of the contract is of such a special nature" or of such a "peculiar value" that damages ascertained by legal rules "would not be a just and reasonable substitute for or representative of that subject-matter in the hands of the party who is entitled to its benefit"—in other words, where the damages are inadequate; and (2) Where, from "some special and practical

features or incidents of the contract inhering either in the subject-matter, in its terms, or in the relations of the parties, it is impossible to arrive at a legal measure of damages at all, or at least with any sufficient degree of certainty, so that no real compensation can be obtained by means of an action at law" —in other words, where damages are impracticable. In fine, the inquiry is whether an award of damages will "put the party in a situation as beneficial to him as if the agreement were specifically performed." *Ibid., section* 1401. Relief is ordinarily obtainable in equity wherever adequate enforcement of a right may not be had at law.

■■ Compensation at law will not afford an adequate remedy for the breach of contract charged in the bill. Without specific enforcement, there will be irreparable injury. It is a continuing contract of indefinite duration, terminable as therein provided, but not by the corporation except for cause; and its subject-matter and incidents are of such nature as to render it impracticable to assess the damages under legal rules with any sufficient degree of certainty. The business has a peculiar and special value. It is an established and profitable enterprise with good will founded on the "James" drugs and products and a considerable potential earning power in the indefinite future, all dependent in major part upon the availability of merchandise not purchasable in the market at prices open to participants in the cooperative plan fostered by the defendant corporation, and merchandise not procurable at all from other sources. It would not be feasible to measure by legal rules the damages consequent upon the destruction or substantial deterioration of complainant's business, or, in other words, there could be no just admeasurement of the damages for lack of certainty and definiteness as to the life of the contract and future earnings, and thus the subject-matter is not of known or readily ascertainable value. For example, equity will sometimes grant specific performance of a lease because it is impracticable to measure with any degree of certainty the loss that would ensue from nonperformance. *Southern Railway Co. v. Franklin & Pennsylvania Railroad Co.,* 96 *Va.* 693, 32 *S. E.* 485 (1899), 44 *L. R. A.* 297; *Rowland v. Cook,* 179 *Wash.* 624,

39 *Pac. (2d)* 224 (1934), 101 *A. L. R.* 180; 49 *Am. Jur., Specific Performance, section* 12. Moreover, compensation at law, however ascertained, would plainly not be a just and reasonable substitute for the subject-matter of the contract under review. The damages recoverable under the common-law rule are not adequate compensation where the subject-matter has a peculiar and special value to the party demanding performance for that reason. *McVoy v. Baumann,* 93 *N. J. Eq.* 638 *(E. & A.* 1922*).* Complainant has a right to his business.

## II.

 Specific enforcement of a contract will not be awarded unless an efficient decree to that end may be made and enforced. Equity may decline jurisdiction where the execution of its decree for specific performance would entail continuing and constant superintendence over a considerable period of time; but this is a rule of policy and convenience of administration, rather than a limitation of jurisdiction, that is not applied unless such relief is found to be impracticable in the particular circumstances.

 Such is not the case here. If the cause of action stated by the bill is sustained by the proofs, the corporation may be enjoined to render to complainant, so long as the contract subsists and complainant observes the stipulations on his part to be performed, service and supplies identical in nature, quality and measure with such as are rendered to all other participating members under the contract. This will reduce judicial superintendence to the minimum; and the supervision required to coerce obedience will offer no practical difficulties. The co-operative contract is largely a development of modern business, designed to serve competitive needs; and only by equitable interposition to compel specific performance can adequate redress be had for the arbitrary denial to a participating member of the service which is the common right.

It is equally feasible to condition performance by the corporation upon full performance by complainant, and to enforce the provision.

## III.

 And the requisite mutuality is not wanting. The contention *contra* rests upon the premise that, although the corporation "can terminate the contract only in certain restricted and unusual circumstances, any 'member' may withdraw. at any time by merely giving notice."

Clearly, there is mutuality of obligation, for until his withdrawal complainant is under a continuing obligation of performance in the event of performance by the corporation. It is not essential that the remedy of specific performance be mutual. *Mantell v. International Plastic Harmonica Corporation, supra.* The modern view is that the rule of mutuality of remedy is satisfied if the decree of specific performance operates effectively against both parties and gives to each the benefit of a mutual obligation. *Walter v. Hoffman,* 267 *N. Y.* 365, 196 *N. E.* 291 (1936), 101 *A. L. R.* 919. Judge Cardozo said:

"What equity exacts today as a condition of relief is the assurance that the decree, if rendered, will operate without injustice or oppression either to plaintiff or to defendant. * * * Mutuality of remedy is important in so far only as its presence is essential to the attainment of that end. The formula had its origin in an attempt to fit the equitable remedy to the needs of equal justice. We may not suffer it to petrify at the cost of its animating principle." *Epstein v. Gluckin,* 233 *N.Y.* 490, 135 *N.E.* 861 (1922).

 The fact that the remedy of specific enforcement is available to one party to a contract is not in itself a sufficient reason for making the remedy available to the other; but it may be decisive when the adequacy of damages is difficult to determine and there is no other reason for refusing specific enforcement. *Restatement, Contracts* (1932), *sections* 372, 373. It is not necessary, to serve the ends of equal justice, that the parties shall have identical remedies in case of breach. See, also, *Driebe v. Fort Penn Realty Co.,* 331 *Pa.* 314, 200 *Atl.* 62 (1939), 117 *A. L. R.* 1091; *Eckstein v. Downing,* 64 *N. H.* 248, 9 *Atl.* 626 (1887); *Zelleken v. Lynch,* 80 *Kans.* 746, 104 *Pac.* 563 (1909). Here, specific enforcement would be conditioned upon performance by complainant. Although the individual member may retire by giving notice, this is a cooperative enterprise accomplished through the medium of a corporate body,

organized to serve the common interest; and, such being the nature of the relationship, the contract is peculiarly one for specific enforcement.

## IV.

As stated, the corporation and the two individual defendants are charged with conspiracy to deprive complainant of the benefits of the contract and to cause his "expulsion as a member of the corporation;" and the individual defendants are also charged with "malicious and unjustifiable interference with the membership agreement." Damages are demanded, compensatory and exemplary; and again the point is made that there is an adequate remedy at law for the consequent injury, and the bill should therefore be dismissed as to these defendants.

It is the settled rule that where equity has rightfully assumed jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of the entire controversy and, except where the jurisdiction of equity depends on the prior establishment of a right at law, settle purely legal rights and grant legal remedies. *Mantell v. International Plastic Harmonica Corporation, supra.* When the basis of the jurisdiction is once perceived, its scope and extent become readily apparent. The rationale of the rule that an equitable feature draws the cause completely within the cognizance of equity is the policy of avoiding a multiplicity of suits; and so jurisdiction of the whole controversy may be assumed for the doing of complete justice in the one suit. The constitutional right of trial by jury is, of course, subject to this inherent equitable jurisdiction. Equity has a general jurisdiction to adjudicate ancillary and incidental matters. This jurisdiction is co-extensive with the rights of the parties in the subject-matter of the suit. 30 *C. J. S., Equity* (1942), *section 67.* It may, in the exercise of a sound discretion, do whatever is necessary to a final adjudication of the entire controversy between the parties, whether it encompasses an action *ex delicto* or one *ex contractu.* And it may grant relief to a defendant or between codefendants. *Ibid., section 76.* It suffices if the matters to be adjudicated be germane to or grow out of the subject-matter of the equitable jurisdiction. There may be a recovery

of the damages ensuing from the wrong which calls for equitable relief. The actions against the individual defendants fall into this category. But the damages awarded in equity are ordinarily compensatory and not punitive. *Ibid., section 72.*

The decree is accordingly reversed, with costs; and the cause is remanded or further proceedings not inconsistent with this opinion.

*For reversal:* Chief Justice VANDERBILT, and Justices CASE, HEHER, BURLING, and ACKERSON—5.

*For affirmance:* WACHENFELD—1.