9 N.J. Super. 78 (1950)
74 A.2d 897
THE MILLER-BECKER COMPANY, AN OHIO CORPORATION, PLAINTIFF-APPELLANT,
v.
P. BALLANTINE & SONS, INC., A NEW JERSEY CORPORATION, CARL W. BADENHAUSEN, WILLIAM H. ALLEY, F.E. OGDEN AND D. RAY CHORPENING, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 22, 1950.
Decided July 12, 1950.
*79 Before Judges McGEEHAN, COLIE and EASTWOOD.
Mr. Milton M. Unger argued the cause for appellant; Mr. Sam Denstman, on the brief (Messrs. Milton M. & Adrian M. Unger, attorneys).
Mr. Richard J. Congleton argued the cause for respondents; Mr. Harold H. Fisher, on the brief (Messrs. Young, Shanley, Foehl & Fisher, attorneys).
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
The plaintiff appeals from a judgment entered in the Chancery Division of the Superior Court. The plaintiff is a bottler of soft drinks and a distributor of ale, beer and soft drinks in Cleveland, Ohio, and in the surrounding area. It has been in business for more than forty-eight years. The corporate defendant is a brewer of malt beverages and the individual defendants are officers or employees of the defendant corporation. Since 1942 plaintiff has been the exclusive distributor of defendant's ale and beer in the Cleveland area.
On March 8, 1949, plaintiff filed a complaint alleging that in January, 1942, plaintiff and defendant Ballantine entered into an oral agreement "by the terms whereof plaintiff agreed to establish and develop a market for the sale and distribution of the products of Ballantine * * * and * * * not to sell or distribute any premium ale other than that of Ballantine, *80 in consideration whereof, Ballantine agreed that so long as plaintiff established and developed and continued to develop the market for Ballantine's products, and sold said products within the allotted territory, and so long as plaintiff did not sell or distribute any premium ale other than that of Ballantine, Ballantine would ship to plaintiff all of plaintiff's requirements for Ballantine's products for resale within the allotted territory * * * and to no one else." Further, that the plaintiff agreed to pay to Ballantine the price established by Ballantine for such products in Ohio. It alleged that under this oral agreement, the plaintiff has an exclusive franchise for the sale of defendant's ale and beer in the Cleveland area, and it charged that defendant contemplates a wrongful termination of the contract. An injunction was sought against defendant from delivering its products to anyone other than plaintiff for resale within the Cleveland area and from doing anything toward supplanting plaintiff as its exclusive distributor in that area. A preliminary injunction was granted.
The defendant's answer denied the making of any contract and alleged that in January, 1942, it selected the plaintiff as the distributor of its products in the Cleveland area, terminable at the pleasure of either party; that the operation of the plaintiff became unsatisfactory to it and it decided to discontinue the relationship, but it was prevented from giving formal notice of termination by the preliminary injunction. Later, on July 11, 1949, by leave of court, defendant gave notice in writing of termination of the distributor relationship, to be effective sixty days thereafter. After final hearing, judgment was entered dismissing the complaint and dissolving the preliminary injunction, but also granting a similar injunction "until further order of this Court and on the condition that appeal from this final judgment be diligently prosecuted by the plaintiff."
It was admitted that from 1937 to 1942 the plaintiff sought the Ballantine distributorship in the Cleveland area; that in 1942 the distributor in that area terminated the relationship, *81 and that on January 12, 1942, Mr. Becker, acting for the plaintiff, and Mr. Von Busse, acting for the defendant, had a conference at defendant's plant in Newark, New Jersey, concerning this distributorship, and came to an agreement, leaving the detailed boundaries of the area involved to be fixed by Mr. Twine, defendant's representative, at a later conference. The nature of this agreement and its legal effect are in dispute.
The court below found that the plaintiff failed to establish the agreement it alleged; that the agreement made at the conference of January 12, 1942, was for representation of the defendant by the plaintiff for such period of time as suited the parties, both parties reserving the right to discontinue or change their arrangements; that the agreement made on January 12, 1942, was embodied in a letter from defendant to plaintiff, dated January 22, 1942; and that the plaintiff failed to prove an enforceable agreement. The letter of January 22nd read as follows:
"It is with pleasure that we welcome your association as our distributor in the territory outlined by our representative, Mr. H.J. Twine.
"We reserve the right to discontinue, or change our present arrangements, and you have the same privilege should our relations for any reason cease to be mutually satisfactory.
"Please be assured that it will be our constant endeavor to make this association a source of complete satisfaction to you, both as regards the maintained high quality of our products and the efficiency of our service. We feel confident that our satisfaction with your distribution of our products will warrant a long and pleasant business relationship.
"Our field men will call upon you at regular intervals. Should these field representatives ever enter into any agreements, or otherwise obligate this company in any manner whatsoever, it is not binding unless confirmed in writing by the brewery.
"Thanking you and looking forward to your becoming another successful member of the Ballantine Family, we are * * *."
The plaintiff's first point is that "The letter of January 22, 1942, was not the contract." The argument advanced is that the letter of January 22, 1942, was a modification of the agreement made on January 12, 1942; that the plaintiff *82 never assented to this modification; and that the modification was ineffective because the assent of both parties to a modification is necessary. Modification of a contract was not involved in this case. The whole argument under this point is grounded upon two false premises: (1) that the court below found that the agreement made on January 12, 1942, was an agreement as claimed by plaintiff, and (2) that the court further found that this agreement was modified by the letter of January 22, 1942.
The next point is that the contract was enforceable. The enforceability in question has to do only with executory dealings. Under the agreement, as found by the court, the plaintiff assumed no obligation. Since there was no mutuality of obligation, the agreement is unenforceable as to executory dealings. Cf. G. Loewus & Co., Inc., v. Vischia, 2 N.J. 54 (1949); Terre Haute Brewing Co. v. Dugan, 102 F.2d 425 (8th Cir. 1939); Silbernagel v. Hirsch Distilling Co., 99 F.2d 829 (8th Cir. 1938); E.I. Du Pont de Nemours & Co. v. Claiborne-Reno Co., 64 F.2d 224 (8th Cir. 1933); R.F. Baker & Co. v. P. Ballantine & Sons, 20 A.2d 82 (Sup. Ct. of Errors, Conn., 1941); Pessin v. Fox Head Waukesha Corporation, 282 N.W. 582 (Sup. Ct., Wis., 1938); also cases annotated in 89 A.L.R. 252; 52 A.L.R. 546; 32 A.L.R. 209.
The plaintiff relies on Mantell v. International Plastic Harmonica Corp., 141 N.J. Eq. 379 (E. & A. 1947), and Fleischer v. James Drug Stores, 1 N.J. 138 (1948), but these cases are distinguishable. The contract in the Mantell case contained peremptory correlative obligations of purchase and sale, and it was certain as to duration and quantity but silent as to price. It was contended that no contract enforceable either at law or equity came into being for want of a stipulation fixing the sale price of the goods constituting the subject matter of the bargain, and that the agreement was unenforceable for indefiniteness and want of mutuality. In upholding the contract, the court there held that mutual obligations were undertaken and that, by a proper construction of the contract, *83 it contained a stipulation for a reasonable price. In the contract involved in the Fleischer case there was mutuality of obligation, but it was contended that the contract was unenforceable because the corporation could terminate the contract only in certain restricted and unusual circumstances, while any member could withdraw at any time by merely giving notice. The court there held that when there is mutuality of obligation, it is not essential that the remedy of specific performance be mutual.
Plaintiff argues next that it was at least entitled to reasonable notice of termination. Even if this were so, the plaintiff has had more than reasonable notice of termination. In its suit instituted March 8, 1949, it anticipated the service of a notice of termination and prevented such service by the injunction it obtained, and by virtue of the injunctions obtained by plaintiff, the defendant has been prevented from terminating the distributor relationship for more than sixteen months.
Since we have concluded that the agreement was unenforceable as to executory dealings, it is unnecessary to consider the other points argued.
The judgment is affirmed.