128 N.J. Super. 385 (1974)
320 A.2d 194
CENTEX HOMES CORPORATION, PLAINTIFF,
v.
EUGENE H. BOAG AND VIRGINIA D. BOAG, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
March 28, 1974.
*386 Mr. David Carmel, attorney for plaintiff. (Messrs. Gross, Demetrakis & Donohue, attorneys).
Mr. Herbert New, attorney for defendants. (Messrs. Brenner, New & Brenner, attorneys).
GELMAN, J.S.C., Temporarily Assigned.
Plaintiff Centex Homes Corporation (Centex) is engaged in the development and construction of a luxury high-rise condominium project in the Boroughs of Cliffside Park and Fort Lee. The *387 project when completed will consist of six 31-story buildings containing in excess of 3,600 condominium apartment units, together with recreational buildings and facilities, parking garages and other common elements associated with this form of residential development. As sponsor of the project Centex offers the condominium apartment units for sale to the public and has filed an offering plan covering such sales with the appropriate regulatory agencies of the States of New Jersey and New York.
On September 13, 1972 defendants Mr. and Mrs. Eugene Boag executed a contract for the purchase of apartment unit No. 2019 in the building under construction and known as "Winston Towers 200." The contract purchase price was $73,700, and prior to signing the contract defendants had given Centex a deposit in the amount of $525. At or shortly after signing the contract defendants delivered to Centex a check in the amount of $6,870 which, together with the deposit, represented approximately 10% of the total purchase of the apartment unit. Shortly thereafter Boag was notified by his employer that he was to be transferred to the Chicago, Illinois, area. Under date of September 27, 1972 he advised Centex that he "would be unable to complete the purchase" agreement and stopped payment on the $6,870 check. Centex deposited the check for collection approximately two weeks after receiving notice from defendant, but the check was not honored by defendants' bank. On August 8, 1973 Centex instituted this action in Chancery Division for specific performance of the purchase agreement or, in the alternative, for liquidated damages in the amount of $6,870. The matter is presently before this court on the motion of Centex for summary judgment.
Both parties acknowledge, and our research has confirmed, that no court in this State or in the United States has determined in any reported decision whether the equitable remedy of specific performance will lie for the enforcement of a contract for the sale of a condominium apartment. The closest decision on point is Silverman v. Alcoa Plaza Associates, *388 37 A.D.2d 166, 323 N.Y.S.2d 39 (App. Div. 1971), which involved a default by a contract-purchaser of shares of stock and a proprietary lease in a cooperative apartment building. The seller, who was also the sponsor of the project, retained the deposit and sold the stock and the lease to a third party for the same purchase price. The original purchaser thereafter brought suit to recover his deposit, and on appeal the court held that the sale of shares of stock in a cooperative apartment building, even though associated with a proprietary lease, was a sale of personalty and not of an interest in real estate. Hence, the seller was not entitled to retain the contract deposit as liquidated damages.[1]
As distinguished from a cooperative plan of ownership such as involved in Silverman, under a condominium housing scheme each condominium apartment unit constitutes a separate parcel of real property which may be dealt with in the same manner as any real estate. Upon closing of title the apartment unit owner receives a recordable deed which confers upon him the same rights and subjects him to the same obligations as in the case of traditional forms of real estate ownership, the only difference being that the condominium owner receives in addition an undivided interest in the common elements associated with the building and assigned to each unit. See the Condominium Act, N.J.S.A. 46:8B-1 et seq.; 15 Am. Jur.2d, Condominiums and Cooperative Apartments, at 977 et seq.; Note, 77 Harv. L. Rev. 777 (1964).
Centex urges that since the subject matter of the contract is the transfer of a fee interest in real estate, the remedy of specific performance is available to enforce the agreement under principles of equity which are well-settled in this state. See Hopper v. Hopper, 16 N.J. Eq. 147 (Ch. 1863); 5A Corbin on Contracts § 1143 (1964); 11 Williston on Contracts *389 § 1418A (3d ed 1968); 4 Pomeroy, Equity Jurisprudence (5th ed. 1941), § 1402, Restatement Contracts § 360.
The principle underlying the specific performance remedy is equity's jurisdiction to grant relief where the damage remedy at law is inadequate. The text writers generally agree that at the time this branch of equity jurisdiction was evolving in England, the presumed uniqueness of land as well as its importance to the social order of that era led to the conclusion that damages at law could never be adequate to compensate for the breach of a contract to transfer an interest in land. Hence specific performance became a fixed remedy in this class of transactions. See 11 Williston on Contracts (3d ed. 1968), § 1418A; 5A Corbin on Contracts § 1143 (1964). The judicial attitude has remained substantially unchanged and is expressed in Pomeroy as follows:
* * * in applying this doctrine the courts of equity have established the further rule that in general the legal remedy of damages is inadequate in all agreements for the sale or letting of land, or of any estate therein; and therefore in such class of contracts the jurisdiction is always exercised, and a specific performance granted, unless prevented by other and independent equitable considerations which directly affect the remedial right of the complaining party * * * [1 Pomeroy, Equity Jurisprudence (5th ed. 1941), § 221(b)]
While the inadequacy of the damage remedy suffices to explain the origin of the vendee's right to obtain specific performance in equity, it does not provide a rationale for the availability of the remedy at the instance of the vendor of real estate. Except upon a showing of unusual circumstances or a change in the vendor's position, such as where the vendee has entered into possession, the vendor's damages are usually measurable, his remedy at law is adequate and there is no jurisdictional basis for equitable relief. But see Restatement, Contracts § 360, comment c.[2] The early English *390 precedents suggest that the availability of the remedy in a suit by a vendor was an outgrowth of the equitable concept of mutuality, i.e., that equity would not specifically enforce an agreement unless the remedy was available to both parties. See the discussion in Stoutenburgh v. Tompkins, 9 N.J. Eq. 332, 342-346 (Ch. 1853); 4 Pomeroy, Equity Jurisprudence (5th ed. 1941); § 1405; Annotation, 65 A.L.R. 7, 40 (1930); Jones v. Newhall, 115 Mass. 244, 15 Am. Rep. 97, 103 (Sup. Jud. Ct. 1874); Comment, 10 Villanova L. Rev. 557, 568-569 (1965).
So far as can be determined from our decisional law, the mutuality of remedy concept has been the prop which has supported equitable jurisdiction to grant specific performance in actions by vendors of real estate.[3] The earliest reported decision in this State granting specific performance in favor of a vendor is Rodman v. Zilley, 1 N.J. Eq. 320 (Ch. 1831), in which the vendee (who was also the judgment creditor) was the highest bidder at an execution sale. In his opinion Chancellor Vroom did not address himself to the question whether the vendor had an adequate remedy at law. The first reported discussion of the question occurs in Hopper v. *391 Hopper, 16 N.J. Eq. 147 (Ch. 1863), which was an action by a vendor to compel specific performance of a contract for the sale of land. In answer to the contention that equity lacked jurisdiction because the vendor had an adequate legal remedy, Chancellor Green said (at p. 148);
"It constitutes no objection to the relief prayed for, that the application is made by the vendor to enforce the payment of the purchase money, and not by the vendee to compel a delivery of the title The vendor has not a complete remedy at law. Pecuniary damages for the breach of the contract is not what the complainant asks, or is entitled to receive at the hands of a court of equity. He asks to receive the price stipulated to be paid in lieu of the land. The doctrine is well established that the remedy is mutual, and that the vendor may maintain his bill in all cases where the purchaser could sue for a specific performance of the agreement."
No other rationale has been offered by our decisions subsequent to Hopper, and specific performance has been routinely granted to vendors without further discussion of the underlying jurisdictional issue.[4]E.g., Brown v. Norcross, 59 N.J. Eq. 427 (Ch. 1900); Moore v. Baker, 62 N.J. Eq. 208 (Ch. 1901); Van Riper v. Wickersham, 77 N.J. Eq. 232 (Ch. 1910); Gerba v. Mitruske, 84 N.J. Eq. 79 (Ch. 1914); Meyer v. Reed, 91 N.J. Eq. 237 (Ch. 1920); Morris v. Eisner, 96 N.J. Eq. 538 (Ch. 1924); Salter v. Beatty, 101 N.J. Eq. 86 (Ch. 1927); Mahaffey v. Sarshik, 101 N.J. Eq. 297 (E. & A. 1927); Harrington v. Heder, 109 N.J. Eq. 528 (E. & A. 1931); Hoffman v. Perkins, 3 N.J. Super. 474 (Ch. Div. 1949).
Our present Supreme Court has squarely held, however, that mutuality of remedy is not an appropriate basis for granting or denying specific performance. Fleischer v. James Drug Stores, 1 N.J. 138 (1948); see also, Restatement, Contracts § 372; 11 Williston, Contracts (3d ed. *392 1968), § 1433. The test is whether the obligations of the contract are mutual and not whether each is entitled to precisely the same remedy in the event of a breach. In Fleischer plaintiff sought specific performance against a cooperative buying and selling association although his membership contract was terminable by him on 60 days' notice. Justice Heher said:
And the requisite mutuality is not wanting. The contention contra rests upon the premise that, although the corporation "can terminate the contract only in certain restricted and unusual circumstances, any `member' may withdraw at any time by merely giving notice."
Clearly, there is mutuality of obligation, for until his withdrawal complainant is under a continuing obligation of performance in the event of performance by the corporation. It is not essential that the remedy of specific performance be mutual. * * * The modern view is that the rule of mutuality of remedy is satisfied if the decree of specific performance operates effectively against both parties and gives to each the benefit of a mutual obligation. * * *
The fact that the remedy of specific enforcement is available to one party to a contract is not in itself a sufficient reason for making the remedy available to the other; but it may be decisive when the adequacy of damages is difficult to determine and there is no other reason for refusing specific enforcement. Restatement, Contracts (1932), sections 372, 373. It is not necessary, to serve the ends of equal justice, that the parties shall have identical remedies in case of breach. [at 149]
The disappearance of the mutuality of remedy doctrine[5] from our law dictates the conclusion that specific performance relief should no longer be automatically available to a vendor of real estate, but should be confined to those special instances where a vendor will otherwise suffer an economic injury for which his damage remedy at law will not be adequate, or where other equitable considerations *393 require that the relief be granted. Cf. Dover Shopping Center, Inc. v. Cushman's Sons, Inc. 63 N.J. Super. 384, 394 (App. Div. 1960). As Chancellor Vroom noted in King v. Morford, 1 N.J. Eq. 274, 281-282 (Ch. Div. 1831), whether a contract should be specifically enforced is always a matter resting in the sound discretion of the court and
* * * considerable caution should be used in decreeing the specific performance of agreements, and * * * the court is bound to see that it really does the complete justice which it aims at, and which is the ground of its jurisdiction.
Here the subject matter of the real estate transaction  a condominium apartment unit  has no unique quality but is one of hundreds of virtually identical units being offered by a developer for sale to the public. The units are sold by means of sample, in this case model apartments, in much the same manner as items of personal property are sold in the market place. The sales prices for the units are fixed in accordance with schedule filed by Centex as part of its offering plan, and the only variance as between apartments having the same floor plan (of which six plans are available) is the floor level or the building location within the project. In actuality, the condominium apartment units, regardless of their realty label, share the same characteristics as personal property.
From the foregoing one must conclude that the damages sustained by a condominium sponsor resulting from the breach of the sales agreement are readily measurable and the damage remedy at law is wholly adequate. No compelling reasons have been shown by Centex for the granting of specific performance relief and its complaint is therefore dismissed as to the first count.
Centex also seeks money damages pursuant to a liquidated damage clause in its contract with the defendants. It is sufficient to note only that under the language of that clause (which was authored by Centex) liquidated damages are limited to such moneys as were paid by defendant at the *394 time the default occurred. Since the default here consisted of the defendant's stopping payment of his check for the balance of the down-payment, Centex's liquidated damages are limited to the retention of the "moneys paid" prior to that date, or the initial $525 deposit. Accordingly, the second count of the complaint for damage relief will also be dismissed.
NOTES
[1] Under New York law, if the contract was deemed to be for the sale of realty, the seller could retain the deposit in lieu of damages.
[2] The Restatement's reasoning, as expressed in § 360, comment c, amounts to the inconsistent propositions that (1) because the vendor may not have sustained any damage which is actionable at law, specific performance should be granted, and (2) he would otherwise sustain damage equal to the loss of interest on the proceeds of the sale. Yet loss of interest is readily measurable and can be recovered in an action at law, and to the extent that the vendor has sustained no economic injury, there is no compelling reason for equity to grant to him the otherwise extraordinary remedy of specific performance. At the end of the comment, the author suggests that the vendor is entitled to specific performance because that remedy should be mutual, a concept which is substantially rejected as a decisional basis in §§ 372 and 373 of the Restatement.
[3] Another theory has been suggested as a basis for equity's jurisdiction to grant specific performance to a vendor: the vendee's breach constitutes an "equitable conversion" of the purchase price of which the vendee is deemed to be a trustee. See Comment, 10 Villanova L. Rev. 557, 569 (1965); 1 Pomeroy, Equity Jurisprudence, (5th ed. 1941), § 221(b). This view has never been suggested in any reported decision in New Jersey, although it has been alluded to in another context. See Hoagland v. Latourette, 2 N.J. Eq. 254, 256 (Ch. 1839).
[4] The doctrine of mutuality is discussed in later specific performance cases where the vendor either lacked title to the property at the time of the contract or there was an infirmity in the vendor's title. E.g., Ten Eyck v. Manning, 52 N.J. Eq. 47 (Ch. 1893).
[5] While the doctrine has been invoked since Fleischer was decided, see Sarokhan v. Fair Lawn Memorial Hospital, Inc., 83 N.J. Super. 127, 135 (App. Div. 1964); Silverstein v. Abco Vending Service, 37 N.J. Super. 439, 448 (App. Div. 1955), its judicial demise has been more recently noted in K & J Clayton Holding Corp. v. Keuffel & Esser Co., 113 N.J. Super. 50, 54 (Ch. Div. 1971).