284 N.J. Super. 3 (1995)
663 A.2d 109
CHRISTINA GIOVINE, PLAINTIFF-APPELLANT,
v.
PETER J. GIOVINE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 10, 1995.
Decided August 11, 1995.
*7 Before Judges SKILLMAN, WALLACE and KLEINER.
James P. Yudes argued the cause for appellant (James P. Yudes, P.C., attorneys; Charles F. Vuotto, Jr., of counsel; Elizabeth E. Bedell, of counsel and on the brief).
Lee M. Hymerling argued the cause for respondent (Archer & Greiner, attorneys; Mr. Hymerling, of counsel and on the brief).
The opinion of the court was delivered by KLEINER, J.A.D.
*8 On July 1, 1994, plaintiff Christina Giovine filed an eleven count complaint against defendant Peter J. Giovine denominated: "Complaint for divorce, domestic torts, equitable claims and jury trial demand." Plaintiff's complaint alleged habitual drunkenness, N.J.S.A. 2A:34-2(e) (count one) and extreme cruelty, N.J.S.A. 2A:34-2(c) (count two) as alternative grounds for the dissolution of the marriage. In counts three through six, plaintiff asserted claims for compensatory and punitive damages based upon an assault and battery which allegedly occurred in March 1972 (count three); intentional infliction of emotional injury/distress commencing in March 1972 (count four); "continuous wrong" between March 1972 and May 1993, resulting in "severe emotional and physical damage" (count five); and negligence (count six).
Counts seven through eleven of plaintiff's complaint alleged equitable claims respecting real property acquired by defendant in February 1969 prior to the marriage and titled solely in defendant's name, predicated upon the concepts of transmutation (count seven); constructive/resulting trust (count eight); implied contract (count nine); unjust enrichment (count ten); and quasi-contract (count eleven).
Plaintiff demanded a jury trial on counts three through eleven.

I  MARITAL HISTORY
Plaintiff and defendant were married on May 1, 1971. Three children were born of this marriage on August 17, 1975, July 5, 1979, and July 7, 1983.
On approximately December 31, 1978, defendant separated from plaintiff. In May 1980, he filed a complaint seeking to establish visitation rights with the two children of the marriage. On August 1, 1980, defendant filed a complaint for divorce, asserting a cause of action for dissolution of marriage predicated upon eighteen consecutive months of separation. Plaintiff filed an answer and counterclaim for divorce, alleging habitual drunkenness and extreme *9 cruelty as alternative grounds for divorce. Additionally, that counterclaim contained three counts for damages predicated upon the following torts: a specific act of assault and battery in March 1972 and a final act of assault and battery on December 28, 1978; infliction of emotional distress based upon the same acts of assault and battery; and "a continuous and unbroken wrong commencing on or about March 1972 and continuing down until December 28, 1978."
Defendant filed an answer to the counterclaim and amended his complaint for divorce, adding a cause of action for divorce based upon acts of extreme cruelty.
In July 1982, while their matrimonial action was pending, the parties reconciled and resumed living together. On July 26, 1982, both parties directed their respective attorneys to discontinue the litigation. The proceedings were dismissed by a stipulation of dismissal with prejudice dated October 25, 1982. The couple separated again in September 1993. As noted, plaintiff filed her present complaint on July 1, 1994. Defendant filed an answer and counterclaim asserting a cause of action for divorce based upon extreme cruelty.

II  PRESENT LITIGATION
On August 8, 1994, defendant filed a motion to strike certain causes of action contained within plaintiff's complaint and to strike plaintiff's demand for a jury trial on counts three through eleven. On September 20, 1994, the motion judge granted defendant's motion, striking all tortious claims occurring prior to June 30, 1992 based upon the applicable statute of limitations, N.J.S.A. 2A:14-2, and limiting plaintiff's proofs on her claims for emotional distress or negligence to those acts alleged to have occurred after June 30, 1992. The motion judge also determined that plaintiff did not have a constitutional right to a jury trial. We granted plaintiff's motion seeking leave to appeal those rulings, which were memorialized in an order dated November 14, 1994. We now affirm in part and reverse in part.

*10 III
Interspousal tort immunity no longer exists to bar the suit of one spouse against another for injuries sustained by one spouse due to the tortious conduct of the other. Merenoff v. Merenoff, 76 N.J. 535, 557, 388 A.2d 951 (1978).
[T]he abolition of the doctrine pertained to tortious conduct generally encompassing not only conventional negligence but also intentional acts, as well as other forms of excessive behavior such as gross negligence, recklessness, wantonness, and the like. The only kind of marital conduct excepted from the abolition was that involving marital or nuptial privileges, consensual acts and simple, common domestic negligence, to be defined and developed on a case-by-case approach.
[Tevis v. Tevis, 79 N.J. 422, 426-27, 400 A.2d 1189 (1979) (citation omitted).]
If the circumstances surrounding a domestic tort and a claim for monetary damages are relevant to a divorce proceeding, the domestic tort must be joined with the divorce proceeding under the "single controversy doctrine" in order to avoid protracted, repetitious and fractionalized litigation. Id. at 434, 400 A.2d 1189.
On appeal, plaintiff contends that the motion judge erred in refusing to follow the decision in Cusseaux v. Pickett, 279 N.J. Super. 335, 652 A.2d 789 (Law Div. 1994), which concluded that "battered-woman's syndrome is the result of a continuing pattern of abuse and violent behavior that causes continuing damage." Id. at 345, 652 A.2d 789. As such, "it must be treated in the same way as a continuing tort." Ibid. Battered woman's syndrome would therefore be an exception to N.J.S.A. 2A:14-2, that "[e]very action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have occurred." Ibid. The decision in Cusseaux substantially relied upon State v. Kelly, 97 N.J. 178, 478 A.2d 364 (1984).
In Kelly, the Supreme Court, relying in part on the research of Lenore E. Walker, The Battered Woman (1979), noted that battered woman's syndrome is a recognized medical condition. By definition, a battered woman is one who is repeatedly physically or emotionally abused by a man in an attempt to force her to do his bidding without regard for her rights. State v. Kelly, supra, 97 *11 N.J. at 193, 478 A.2d 364. According to experts, in order to be a battered woman, the woman and her abuser must go through the "battering cycle" at least twice. Ibid.
The battering cycle consists of three stages. Ibid. Stage one, the "tension-building stage," involves some minor physical and verbal abuse while the woman tries to prevent an escalation of the abuse by assuaging the abuser with her passivity. Ibid. (citation omitted). Stage two, the "acute battering incident," is characterized by more severe battering due to either a triggering event in the abuser's life or the woman's inability to control the anger and fear she experienced during stage one. Ibid. (citation omitted). During stage three, the abuser pleads for forgiveness and promises that he will not abuse again. Id. at 193-94, 478 A.2d 364 (citation omitted). This period of relative calm and normalcy eventually ends when the cycle begins anew. Id. at 194, 478 A.2d 364 (citation omitted).[1]
"The cyclical nature of battering behavior helps explain why more women simply do not leave their abusers." Ibid. The caring and attentive behavior of the abuser during stage three fuels the victim's hope that her partner has reformed and keeps her tied to the relationship. Ibid. In addition, some women who grew up in violent families do not leave abusive relationships because they perceive their situations as normal. Ibid. Others cannot face the reality of their situations. Ibid. Some victims "become so demoralized and degraded by the fact that they cannot predict or control the violence that they sink into a state of psychological paralysis and become unable to take any action at all to improve or alter the situation." Ibid. Victims are often afraid to seek help out of shame, fear that no one will believe them, or fear of retaliation by their abusers. Id. at 195, 478 A.2d 364. "They literally become trapped by their own fear." Ibid.
*12 In Kelly, the Supreme Court held that expert testimony on battered woman's syndrome was admissible to show that a woman on trial for murder who was repeatedly beaten during her marriage honestly believed that she was in imminent danger of death when she stabbed her husband, and therefore, she acted in self-defense. Id. at 187, 202-04, 478 A.2d 364.
In State v. Ellis, 280 N.J. Super. 533, 543, 656 A.2d 25 (App.Div. 1995) (citing State v. Kelly, supra), we concluded that evidence of battered woman's syndrome can be introduced in a criminal proceeding as evidence to explain why a victim of a kidnapping neither attempted to escape a kidnapper nor immediately reported the kidnapping. In Ellis, the victim was the defendant's girl-friend.
Cusseaux v. Pickett, supra, recognized for the first time in this state, that a woman who suffers from the medically diagnosable condition of battered woman's syndrome is entitled to seek compensation for the physical and emotional injuries attributable to the abusive conduct during the course of the relationship. The trial judge found that:
Because the battered-woman's syndrome is the result of a continuing pattern of abuse and violent behavior that causes continuing damage, it must be treated in the same way as a continuing tort. It would be contrary to the public policy of this State, not to mention cruel, to limit recovery to only those individual incidents of assault and battery for which the applicable statute of limitations has not yet run. The mate who is responsible for creating the condition suffered by the battered victim must be made to account for his actions  all of his actions. Failure to allow affirmative recovery under these circumstances would be tantamount to the courts condoning the continued abusive treatment of women in the domestic sphere. This the courts cannot and will never do.
[Cusseaux v. Pickett, supra, 279 N.J. Super. at 345, 652 A.2d 789.]
Cusseaux established a four-part test to state a cause of action for battered woman's syndrome:
1) involvement in a marital or marital-like intimate relationship; and 2) physical or psychological abuse perpetrated by the dominant partner to the relationship over an extended period of time; and 3) the aforestated abuse has caused recurring physical or psychological injury over the course of the relationship; and 4) a past or present inability to take any action to improve or alter the situation unilaterally.
[Id. at 344, 652 A.2d 789 (footnotes omitted).]
*13 We agree with the premise espoused in Cusseaux and conclude that a wife diagnosed with battered woman's syndrome should be permitted to sue her spouse in tort for the physical and emotional injuries sustained by continuous acts of battering during the course of the marriage, provided there is medical, psychiatric, or psychological expert testimony establishing that the wife was caused to have an "inability to take any action to improve or alter the situation unilaterally." Ibid. In the absence of expert proof, the wife cannot be deemed to be suffering from battered woman's syndrome, and each act of abuse during the marriage would constitute a separate and distinct cause of action in tort, subject to the statute of limitations, N.J.S.A. 2A:14-2. Laughlin v. Breaux, 515 So.2d 480, 482-83 (La. Ct. App. 1987).
Our disagreement with Cusseaux is predicated upon semantics. Cusseaux classifies battered woman's syndrome as a continuous tort.[2] The concept of "continuous tort" has been recognized in this state. Morey v. Essex County, 94 N.J.L. 427, 430, 110 A. 905 (E. & A. 1920) (unremitting trespass is a continuous tort); Russo Farms, Inc. v. Vineland Bd. of Educ., 280 N.J. Super. 320, 327-28, 655 A.2d 447 (App.Div. 1995) (claim of inverse condemnation continued to accrue as long as defendant's conduct caused plaintiff's property to be subject to continual flooding due to negligent construction of an adjoining building); Aykan v. Goldzweig, 238 N.J. Super. 389, 392, 569 A.2d 905 (Law Div. 1989) (continuous negligent representation by an attorney is a continuous tort which tolls the statute of limitations until the representation is terminated or the client discovered or should have discovered the injury). This concept was also discussed, although not applied, in Tortorello v. Reinfeld, 6 N.J. 58, 66, 77 A.2d 240 (1950), in reference to a claim that a continuing course of negligent treatment by a physician should be considered a continuous tort, and not an isolated incident of negligent treatment.
*14 We do not adopt the conclusion in Cusseaux that battered woman's syndrome is itself a continuous tort. Battered woman's syndrome is more correctly the medical condition resulting from continued acts of physical or psychological misconduct. Because the resulting psychological state, composed of varied but identifiable characteristics, is the product of at least two separate and discrete physical or psychological acts occurring at different times, to overcome the statute of limitations, it is imperative that the tortious conduct giving rise to the medical condition be considered a continuous tort. As noted in Kelly:
The combination of all of these symptoms  resulting from sustained psychological and physical trauma compounded by aggravating social and economic factors  constitutes the battered-woman's syndrome. Only by understanding these unique pressures that force battered women to remain with their mates, despite their long-standing and reasonable fear of severe bodily harm and the isolation that being a battered woman creates, can a battered woman's state of mind be accurately and fairly understood.
[State v. Kelly, supra, 97 N.J. at 196, 478 A.2d 364.]
The Supreme Court in Kelly and the Law Division in Cusseaux placed substantial weight on the legislative findings which led to the enactment of the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-1 to -16.[3] Those findings deserve repeating:
The Legislature finds and declares that domestic violence is a serious crime against society; that there are thousands of persons in this State who are regularly beaten, tortured and in some cases even killed by their spouses or cohabitants; that a significant number of women who are assaulted are pregnant; that victims of domestic violence come from all social and economic backgrounds and ethnic groups; that there is a positive correlation between spousal abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence. It is therefore, the intent of the Legislature to assure the victims of domestic violence the maximum protection from abuse the law can provide.
.... Further, it is the responsibility of the courts to protect victims of violence that occurs in a family or family-like setting by providing access to both emergent and long-term civil and criminal remedies and sanctions, and by ordering those remedies and sanctions that are available to assure the safety of the victims and *15 the public. To that end, the Legislature encourages .. . the broad application of the remedies available under this act in the civil and criminal courts of this State.
[N.J.S.A. 2C:25-18.]
Cusseaux had no cause to discuss the statute of limitations, N.J.S.A. 2A:14-2, as it might affect a cause of action for the medical condition of battered woman's syndrome.
In Kyle v. Green Acres at Verona, Inc., 44 N.J. 100, 207 A.2d 513 (1965), the Supreme Court held that N.J.S.A. 2A:14-21 "foreclose[d] a tolling of the running of [the limitations period] unless plaintiff was [insane] at the time the cause of action accrued...." Id. at 106-07, 207 A.2d 513. The Court carved out an equitable exception, however, where defendant's "negligent act brings about [a] plaintiff's insanity." Id. at 111, 207 A.2d 513. Applying equitable considerations, the Court concluded:
[I]f plaintiff's insanity was caused by defendant's wrongful act, it may be said that such act was responsible for plaintiff's failure or inability to institute her action prior to the running of the statute of limitations. We feel that justice here requires us to carve out an equitable exception to the general principle that there is no time out for the period of time covered by the disability if the disability accrued at or after the cause of action accrued. Thus, a defendant whose negligent act brings about plaintiff's insanity should not be permitted to cloak himself with the protective garb of the statute of limitations.
[Ibid. (footnote omitted).]
The Court added:
The equitable approach should mandate the following: A trial court shall itself without a jury hear and determine (1) whether insanity developed on or subsequent to the date of the alleged act of defendant and within the period of limitation and if so, whether that insanity resulted from the defendant's acts; and (2) whether plaintiff's suit was started within a reasonable time after restoration of sanity....
[Id. at 112, 207 A.2d 513.]
"Insane," as used in N.J.S.A. 2A:14-21, means "such a condition of mental derangement as actually prevents the sufferer from understanding his [or her] legal rights or instituting legal action." Ibid.
In Jones v. Jones, 242 N.J. Super. 195, 576 A.2d 316 (App.Div.), certif. denied, 122 N.J. 418, 585 A.2d 412 (1990), we applied equitable considerations to abrogate the running of the statute of limitations against an incest victim. We noted the victim's emotional condition as a justification for tolling the statute of limitations, *16 as well as the fact that the victim plaintiff was placed under physical and psychological duress by the defendant. Plaintiff's expert psychologist opined that "individuals subjected to childhood sexual abuse often find it impossible to communicate and describe such misconduct." Id. at 201, 576 A.2d 316. Jones likened plaintiff's condition to the condition of insanity, which tolls the statute of limitations in N.J.S.A. 2A:14-21 and provides in part:
If any person entitled to any of the actions or proceedings specified in sections 2A:14-1 to 2A:14-8 or sections 2A:14-16 to 2A:14-20 ... is or shall be, at the time of any such cause of action or right or title accruing, under the age of 21 years, or insane, such person may commence such action ... after his coming to or being of full age or of sane mind.
[Ibid. (emphasis added).]
We are able to draw an analogy between the status of the plaintiff in Jones to the status of a victim of repeated violence within the marital setting, who may "sink into a state of psychological paralysis and become unable to take any action at all to improve or alter the situation." Kelly, supra, 97 N.J. at 194-95, 478 A.2d 364 (citations omitted); Cusseaux, supra, 279 N.J. Super. at 341, 652 A.2d 789.
Jones also determined that duress may toll the statute of limitations when "it is either an element of or inherent in the underlying cause of action." Jones, supra, 242 N.J. Super. at 208, 576 A.2d 316 (citations omitted). We prefaced that conclusion with this admonition:
We do not suggest that the decisions we have cited should be applied uncritically whenever a plaintiff claims that his or her failure to initiate suit in a timely fashion was caused by a defendant's wrongful act. We are, nevertheless, of the view that, within certain limits, a prospective defendant's coercive acts and threats may rise to such a level of duress as to deprive the plaintiff of his freedom of will and thereby toll the statute of limitations.
[Ibid.]
As noted in Tevis v. Tevis, supra, 79 N.J. at 431, 400 A.2d 1189, the Legislature has not specified when a cause of action shall be deemed to have "accrued" for the purposes of the statute of limitations for tortious injury to property or persons. The accrual of a cause of action has been left entirely as a matter of judicial determination, interpretation and administration. Ibid. (citing *17 Rosenau v. City of New Brunswick, 51 N.J. 130, 137, 238 A.2d 169 (1968)).
The role of the court in interpreting legislative intent respecting the statute of limitations is illustrated in Jones, supra:
Unswerving, mechanistic application of statutes of limitations would at times "inflict obvious and unnecessary harm upon individual plaintiffs" without materially advancing the objectives they are designed to serve. The legislative and judicial response to such inequities has been to provide certain statutory exceptions....
[Jones, supra, 242 N.J. Super. at 203, 576 A.2d 316 (citation omitted).]
Similarly, the Supreme Court in Galligan v. Westfield Centre Service, Inc., 82 N.J. 188, 412 A.2d 122 (1980) held:
A "just accommodation" of individual justice and public policy requires that "in each case the equitable claims of opposing parties must be identified, evaluated and weighed." Whenever dismissal would not further the Legislature's objectives in prescribing the limitation, the plaintiff should be given an opportunity to assert his claim.
[Id. at 193, 412 A.2d 122 (citations omitted).]
We recognize that this same reasoning was implicated in Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973), which concluded that a cause of action will be held not to accrue until an injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim, thus resulting in a tolling of the statute of limitations on equitable grounds.
We also note that in Lopez, the Supreme Court specifically directed that the determination whether to toll the statute of limitations is a legal question "within the province of the court." Id. at 274, 300 A.2d 563.
Likewise, in Kyle v. Green Acres at Verona, Inc., supra, 44 N.J. at 112, 207 A.2d 513, the Supreme Court directed:
A trial court shall itself without a jury hear and determine (1) whether insanity developed on or subsequent to the date of the alleged act of defendant and within the period of limitation and if so, whether that insanity resulted from the defendant's acts; and (2) whether plaintiff's suit was started within a reasonable time after restoration of sanity....
[Ibid.]
*18 That same mandate will be applicable in the trial of this matter. It will be incumbent upon plaintiff to establish pretrial, by medical, psychiatric or psychological evidence, that she suffers from battered woman's syndrome, which caused an inability to take any action to improve or alter the circumstances in her marriage unilaterally, so as to warrant a conclusion by the trial judge that the statute of limitations should be tolled.[4]
We construe the clear legislative statement in the preamble to N.J.S.A. 2C:25-18 as justification for the decision we reach: "the Legislature encourages ... the broad application of the remedies available under this act in the civil and criminal courts of this State." Ibid. The motion judge, in refusing to be guided by Cusseaux, applied N.J.S.A. 2A:14-2 mechanistically and totally ignored the invitation of the Legislature. We recognize that the motion judge was not bound to follow Cusseaux, as that opinion was rendered by a court of concurrent jurisdiction. However, as we now subscribe to the concept articulated in Cusseaux, we reverse the motion judge's decision and direct that plaintiff shall be entitled to present proof that she has the medically diagnosed condition of battered woman's syndrome. Plaintiff shall be entitled to sue her husband for damages attributable to his continuous tortious conduct resulting in her present psychological condition, provided she has medical, psychiatric, or psychological expert proof to establish that she was caused to have an inability "to take any action at all to improve or alter the situation." Cusseaux, supra, 279 N.J. Super. at 341, 652 A.2d 789.
Our dissenting colleague properly notes that plaintiff has failed to present any medical, physical or psychological evidence to support her claim that she suffers from the medical condition *19 labeled battered woman's syndrome. However, the trial court dismissed count five of plaintiff's complaint alleging "continuous wrong" not because plaintiff failed to present proof of her medical condition in response to defendant's motion, but because the decision in Cusseaux was not binding upon a court of concurrent jurisdiction. Yet, the trial court established a discovery schedule which encompassed the future filing of plaintiff's expert reports. Accordingly, the motion judge's decision to bar all claims for injuries both psychological and physical suffered prior to June 30, 1992 was too broad and was prematurely granted. The motion to dismiss plaintiff's claim should have been decided after plaintiff was compelled to file her expert medical reports, and not prior to the completion of discovery.

IV
Although plaintiff should not have been foreclosed from attempting to prove a claim of battered woman's syndrome, the decision of the trial court dismissing certain aspects of plaintiff's complaint was correct.
In the third count of plaintiff's complaint for divorce, plaintiff specifically refers to a battery which occurred in March 1972, which caused plaintiff to suffer a perforated eardrum resulting in surgery and a two-week hospitalization. Plaintiff contends she suffered a permanent loss in hearing as a result of that attack. In that count, plaintiff also contends: "The defendant has continually since March of 1972, attacked the plaintiff causing her on numerous occasions great physical and bodily injury. The last such beating having occurred in or about June of 1993."[5]
*20 It is clear that the statute of limitations bars any claim asserted in count three for damages attributable to an assault and battery which allegedly occurred in March 1972. The motion judge properly dismissed that claim.
In count five of plaintiff's complaint, plaintiff repeats, by reference, the allegations of count three and then asserts:
The defendant's conduct against the plaintiff has been a continuous and unbroken wrong commencing in or about March of 1972 and continuing down until May of 1993. Said continuous course of conduct by the defendant has caused the plaintiff severe emotional damage and physical damage.
Although plaintiff does not specifically refer to battered woman's syndrome, it is clear that count five is designed to encompass that claim.
We conclude that regardless of any expert medical opinion which may hereafter be filed, all psychological or physical injury associated with the alleged March 1972 incident is barred by the statute of limitations.
As noted, the medical condition of battered woman's syndrome does not occur until a woman is battered at least twice. Kelly, supra, 97 N.J. at 193, 478 A.2d 364 (citations omitted). The physical and emotional injuries suffered as a result of an initial striking may give rise to a tort claim against a spouse, but such a claim must be asserted within two years of the date of injury. N.J.S.A. 2A:14-2. Battered woman's syndrome does not develop, if at all, until a spouse is abused a second time. One common characteristic of battered woman's syndrome is "psychological paralysis," the inability of the victim "to take any action at all to improve or alter the situation." Kelly, supra, 97 N.J. at 194-95, 478 A.2d 364. Here, plaintiff was able to take action. In 1980, plaintiff filed a counterclaim for divorce which alleged acts of extreme cruelty, including a battery committed in March 1972 and a final battery, committed December 28, 1978. She also alleged psychological damage attributable to those beatings. Clearly, the *21 statute of limitations, N.J.S.A. 2A:14-2, must bar any present cause of action predicated upon those alleged marital torts.[6]
Our conclusion that plaintiff's damage claim is barred does not, however, prevent the introduction of proof of those incidents (March 1972 and December 1978) in the forthcoming trial of this matrimonial action. The component of the motion judge's ruling which barred all proofs on plaintiff's claims for emotional distress or negligence to acts occurring after June 30, 1992 was error.
Obviously, in order to prove the medical condition of battered woman's syndrome, plaintiff must be permitted to prove all acts of physical or psychological misconduct. This proof will also encompass the first beating in March 1972. The medical condition is attributable to more than one act of battering. Although plaintiff may be barred from recovering damages for certain marital torts (here, the act allegedly committed in March 1972, which was pled, and on December 28, 1978, which was not specifically pled), those acts and others may be relevant in plaintiff's proofs presented to establish plaintiff's claim of emotional distress. "Relevant evidence" is defined as "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. It was error for the court to bar all evidence of abuse occurring prior to June 30, 1992. Some or all evidence of pre-1992 events may be relevant to proving plaintiff's causes of action framed in terms of infliction of emotional distress or negligence. Rulings which exclude proffered evidence are best made at trial, where the court is best able to evaluate "the logical connection between the proffered evidence and a fact in issue." *22 State v. Hutchins, 241 N.J. Super. 353, 358, 575 A.2d 35 (App.Div. 1990).
Additionally, prior acts of extreme cruelty are always evidential to establish that the last act of cruelty complained of was of such character as to make it unreasonable to expect that plaintiff would continue to cohabit with defendant. That is the basic underpinning of a cause of action for divorce predicated on extreme cruelty. N.J.S.A. 2A:34-2(c) defines "extreme cruelty" as:
any physical or mental cruelty which endangers the safety or health of the plaintiff or makes it improper or unreasonable to expect the plaintiff to continue to cohabit with the defendant.
[Ibid.]
As noted in Scalingi v. Scalingi, 65 N.J. 180, 320 A.2d 475 (1974):
Prior to the 1971 amendment, extreme cruelty was considered to be that degree of cruelty, either actually inflicted or reasonably inferred, which endangered the life or health of the aggrieved party, or rendered his or her life one of such extreme discomfort and wretchedness as to incapacitate him or her physically or mentally from discharging the marital duties.
The 1971 amendment not only embraces the foregoing, but also includes physical or mental cruelty which makes it improper or unreasonable to expect the plaintiff to continue to cohabit with the defendant. N.J.S.A. 2A:34-2(c). This latter provision substantially broadens the concept of extreme cruelty as it existed under the earlier statute.
[Id. at 183, 320 A.2d 475 (citations omitted).]
In Scalingi, plaintiff presented proof of prior acts of physical and mental cruelty preceding the last act of cruelty committed within three months prior to the filing of plaintiff's complaint. Ibid.
It is therefore clear that plaintiff must be permitted to present proofs of all acts of cruelty which occurred during the course of her marriage to defendant. Those prior acts may be offered to prove plaintiff's cause of action for divorce predicated on the grounds of extreme cruelty, or they may be offered as relevant evidence in conjunction with plaintiff's claim for damages attributable to battered woman's syndrome, intentional infliction of emotional distress and negligence.

*23 V
As we noted preliminarily, plaintiff's complaint demanded a trial by jury on counts three through six of her complaint alleging "domestic torts" and on counts seven through eleven alleging "equitable claims." On defendant's motion to strike plaintiff's jury trial demand, the motion judge, relying on Boardwalk Properties, Inc. v. BPHC Acquisition, Inc., 253 N.J. Super. 515, 526-27, 602 A.2d 733 (App.Div. 1991), determined that plaintiff had no constitutional right to a trial by jury and granted defendant's motion to strike.
Plaintiff contends that she has a constitutional right to a jury trial on her tort claims pursuant to N.J. Const. art I, ¶ 9. In support of that argument, plaintiff cites Tweedley v. Tweedley, 277 N.J. Super. 246, 649 A.2d 630 (Ch.Div. 1994). Defendant contends that the motion judge's ruling should be affirmed, citing Davis v. Davis, 182 N.J. Super. 397, 442 A.2d 208 (Ch.Div. 1981).
The Seventh Amendment of the Federal Constitution, which provides the right to a trial by jury in a civil case, is not enforceable against the states.
By article I, paragraph 9, of the Constitution of 1947, "The right of a trial by jury shall remain inviolate." This provision means exactly what it says. Where the right to a trial by jury existed under the Constitution of 1844, the right continues unimpaired under the new Constitution.
[Steiner v. Stein, 2 N.J. 367, 378-79, 66 A.2d 719 (1949); See also Boardwalk Properties, Inc. v. BPHC Acquisition, Inc., supra, 253 N.J. Super. at 527, 602 A.2d 733.]
At common law, prior to 1947, cases sounding in tort carried with them a right to a jury trial. Kenney v. Scientific, Inc., 213 N.J. Super. 372, 374-75, 517 A.2d 484 (App.Div. 1986). The concurrent jurisdiction of the Law Division and Chancery Division does not deny a party the right to a jury trial under the State Constitution. Fisch v. Manger, 24 N.J. 66, 75, 130 A.2d 815 (1957); O'Neill v. Vreeland, 6 N.J. 158, 167, 77 A.2d 899 (1951).
Nevertheless, "[i]f a court of equity, prior to 1947, would have considered the legal issue `ancillary' or `incidental' to the *24 cognizable equitable claim, then the issue was [and still is] triable without a jury." Boardwalk Properties, Inc. v. BPHC Acquisition, Inc., supra, 253 N.J. Super. at 527, 602 A.2d 733; See also Fleischer v. James Drug Stores, 1 N.J. 138, 150, 62 A.2d 383 (1948). There is no right to a jury trial if the legal issues are "germane to or grow out of the subject-matter of the equitable jurisdiction." Fleischer v. James Drug Stores, ibid. "However, it is incorrect to assume that all claims arising out of the same controversy are `germane to or grow out of the subject matter of the equitable jurisdiction.' Indeed, legal claims may grow out of a controversy that are independent of the equitable action." Boardwalk Properties, Inc. v. BPHC Acquisition, Inc., supra, 253 N.J. Super. at 528, 602 A.2d 733.
For example, in Chiacchio v. Chiacchio, 198 N.J. Super. 1, 7, 486 A.2d 335 (App.Div. 1984), the court held that a third-party complaint against Allstate Insurance Company and Allstate's counterclaim for declaratory relief, which involved legal issues relating to Allstate's liability for domestic torts allegedly committed by defendant against plaintiff under an insurance policy issued by Allstate, did not arise out of the marital relationship that gave rise to plaintiff's divorce and tort action against defendant.
In contrast, in Apollo v. Kim Anh Pham, 192 N.J. Super. 427, 430, 432, 470 A.2d 934 (Ch.Div. 1983), aff'd, 224 N.J. Super. 89, 539 A.2d 1222 (App.Div. 1987), the court concluded that the legal demand for damages presented by defendant in her counterclaim, based on an alleged contract wherein plaintiff promised to support defendant and her children in exchange for her cohabiting with plaintiff in Vietnam and subsequently maintaining a home for him in the United States, were ancillary to plaintiff's equitable claims for specific performance, arising out of the same facts based on theories of quantum meruit and quasi-contract.
The Chancery Division has twice considered the issue at hand. In Davis v. Davis, supra, 182 N.J.Super at 398-99, 442 A.2d 208, the court denied a wife's request for a jury trial on her domestic tort claim based largely on a report by the subcommittee of the *25 Supreme Court Committee on Matrimonial Litigation, to the effect that: "As a matter of judicial administration, no jury trial for a marital tort should be provided in an action for divorce...." Supreme Court Committee on Matrimonial Litigation, Phase Two Final Report, June 10, 1981, at 78-79. The subcommittee concluded that a domestic tort claim is closely related to equitable distribution and therefore, is incidental and ancillary to the underlying divorce action. Id. at 399, 442 A.2d 208. Hence, the subcommittee recommended that courts should not allow a jury trial of a domestic tort in conjunction with an action for divorce. Ibid. The court noted that the report had not been implemented and did not have the force of law. Ibid. We note that the subcommittee report did not indicate that a tort claimant does not have a right to a jury trial. The recommendation was primarily predicated upon the dictates of judicial administration, focusing upon the difficulty in accommodating a jury trial within the framework of an equitable proceeding.
The Chancery Division came to the opposite conclusion in Tweedley v. Tweedley, supra, 277 N.J. Super. at 247, 649 A.2d 630. First, the Tweedley court noted that its case was distinguishable from Davis because defendant amended her counterclaim for divorce from extreme cruelty to no-fault, and plaintiff's allegations of cruelty were few. Id. at 252, 649 A.2d 630. Therefore, the Tweedley court stated that it could not conclude that the tort claim was closely related to the divorce action. Ibid.
Tweedley also relied on Merenoff v. Merenoff, supra. The Supreme Court, in discussing the scope of interspousal tort liability, declared:
There is a range of activity arising in the course of a marriage relationship beyond the reach of the law of torts. Special matters of privacy and familiarity may be encompassed by a marital or nuptial privilege and fall outside the bounds of a definable and enforceable duty of care. Certain conduct may also be regarded as "consensual", involving the "give-and-take" and subtle ebb and flow of married life. In these areas courts and juries cannot be expected to grasp sensibly and consistently the acceptable norm of married living or chart the parameters of reasonable marital behavior as a predicate for affixing liability in tort.

*26 [Merenoff v. Merenoff, supra, 76 N.J. at 555, 388 A.2d 951 (citations omitted) (emphasis added).]
Furthermore, the Court commented:
Similarly, certain kinds of claimed injuries between married persons will be based on simple domestic carelessness arising from activities which partake of the everyday exigencies of regular household existence and, for that reason, may not readily be controlled or influenced by the law of torts through the judicial imposition of a duty of care and the corresponding obligation to respond in damages for its breach. Thus, absent the immunity bar, the fear that trivial, exaggerated or unrealistic claims for personal injury will be brought by married persons is counterpoised by the realization that such claims for the most part will not be cognizable by courts or rewarded by juries.

[Id. at 555-56, 388 A.2d 951 (citation omitted) (emphasis added).]
We recognize that Merenoff was a consolidation of two appeals: Merenoff v. Merenoff, a wife's claim against her husband for the traumatic amputation of her left index finger, resulting from his alleged negligent use of a hedge trimmer; and Mercado v. Mercado, a wife's claim for serious burns resulting from her husband's use of a flammable substance near a stove. Neither case involved an intentional tort allegedly committed by one spouse against the other. Nonetheless, the Court concluded that interspousal immunity in all tort actions would thereafter be abolished. Id. at 556, 388 A.2d 951. In its historical analysis leading to its ultimate conclusion, Merenoff cited Tevis v. Tevis, 155 N.J. Super. 273, 382 A.2d 697 (1978), rev'd on other grounds, 79 N.J. 422, 400 A.2d 1189 (1979), in which the Appellate Division recognized a spouse's right to sue for interspousal intentional torts. Tevis involved an appeal of a jury verdict awarding compensatory and punitive damages to a former wife for injuries sustained as a result of assault and battery committed by her former husband at a time when the parties were still married. The Supreme Court stated:
Divorce or separation provide escape from tortious abuse but can hardly be equated with a civil right to redress and compensation for personal injuries. Equally arcane and unworthy is the notion that a wronged spouse, who has been injured at the hands of her or his mate, can and should resort to an arsenal of "private sanctions". Regardless of the ways a person can "get back" at one's spouse, they do not add up to an enforceable civil right of recovery for damages.
[Merenoff v. Merenoff, supra, 76 N.J. at 556-57, 388 A.2d 951 (citations omitted).]
*27 We find nothing in the language of the Supreme Court to prohibit the right to a jury trial.
The Supreme Court has not had occasion to address the specific right of trial by jury to recover damages for interspousal torts since its decision in Merenoff. The Court did not discuss trial by jury when it later decided Tevis v. Tevis, 79 N.J. 422, 400 A.2d 1189 (1979) and concluded a marital tort claim must be presented in conjunction with pending matrimonial litigation by virtue of the entire controversy rule. Id. at 434, 400 A.2d 1189.
Tweedley did not merely distinguish Davis, but pointed out that in New Jersey, fault is not one of the criteria a court should consider in resolving the issues of support and equitable distribution. Tweedley v. Tweedley, supra, 277 N.J. Super. at 253, 649 A.2d 630. In addition, the court explained that it is substantively and procedurally feasible for the family court judge to hear the divorce action while permitting a jury to determine the issues of damages and fault, which are central to a domestic tort claim. Ibid. The court suggested that the family court judge can then allocate the damages and/or modify the support following the jury verdict. Ibid. Finally, the court stated that divorce actions are already complicated and subject to delay because Tevis requires the joinder of domestic tort claims with the underlying divorce action. Ibid. Therefore, the court opined that allowing a jury trial on the domestic tort claim will not increase the delay or complicate the issues. Ibid.
The Davis court provided no analysis in its decision, other than citing the report of the subcommittee of the Supreme Court Committee on Matrimonial Litigation. The Tweedley court, however, thoroughly explained why a jury trial on the domestic tort claim would not further complicate the divorce action or cause any more delay than what Tevis already caused. In addition, the Tweedley court explained that the domestic tort is not ancillary to the divorce action because fault, the major issue posed by a domestic tort, is not an issue in the determination of support or equitable distribution.
*28 We find the analysis in Tweedley more persuasive than that in Davis. In addition to the reasons expressed in Tweedley, we note that presently a married person may sue a spouse for damages attributable to tortious conduct. If the injured spouse chooses not to sue for divorce, the tort claimant will be entitled to a jury trial in the Law Division. However, if the injured spouse also seeks a divorce, that spouse would be deprived of a jury trial. We can find no logical reason to maintain that dichotomy.
We are mindful that since Davis, decided in 1981, there has not been an onslaught of matrimonial litigants challenging the deprivation of a right to a jury trial on damage claims arising from domestic torts. We infer that our courts of equity have been able to adjudicate tort claims asserted in matrimonial litigation and to ascribe damages as a component of a divorce judgment within the ambit of the expectations of the tort claimant. We envision that tort claims encompassing complex medical issues or substantial claims of permanent disability, whether physical or psychological, may warrant a jury trial. Just as Merenoff created an exception from the abolition of interspousal torts, claims based on "marital or nuptial privileges, consensual acts and simple, common domestic negligence, to be defined and developed on a case-by-case approach," Tevis v. Tevis, supra, 79 N.J. at 427, 400 A.2d 1189, we also conclude that tort claims which are not the permanent cause of serious and significant psychological or physical injuries should not give rise to a jury trial.
Every tort claimant should be entitled to demand a jury trial in the first pleading filed asserting such a claim in a matrimonial dissolution proceeding. However, in order to qualify for a jury trial, the claimant must establish by written expert opinion that proofs will be introduced at trial demonstrating that the injury is serious and significant, resulting in permanent physical or psychological injury, to be defined and developed on a case-by-case approach. Alternatively, a plaintiff must establish that the nature of the injury, whether physical or psychological, requires complex medical evidence. A tort claimant will be required to *29 meet this threshold in response to a motion to strike the jury trial demand after all discovery has been completed and the pending matter is deemed ready for trial by the court.
We are constrained to reverse the decision of the motion judge in this case. Plaintiff shall have the right to present her claims for compensatory and punitive damages to a jury as part of the entire dissolution of marriage proceeding, provided that plaintiff can establish that she has sustained serious or significant permanent physical or psychological damage, or that her injuries require complex medical proof.
In the presentation of plaintiff's claim for damages to the jury, plaintiff obviously will present proof of her age, her physical and emotional health, and possibly claims that her occupational capacity is limited by her physical or emotional health, proximately resulting from defendant's tortious conduct. If plaintiff recovers a favorable jury verdict predicated upon those proofs, then the court thereafter shall be particularly mindful of that judgment in equitably dividing the marital property. N.J.S.A. 2A:34-23.1 directs that a court shall consider fifteen factors in equitably dividing property, including "[t]he age and physical and emotional health of the parties;" "[t]he income and earning capacity of each party;" and "[t]he debts and liabilities of the parties." Ibid.
Clearly, plaintiff's age, physical and emotional health and occupational limitations, if any, attributable to defendant's tortious conduct, may not again be considered in evaluating the equitable division of property issues. Likewise, defendant's actual liability in tort resulting in judgment must be considered in the court's decision respecting the division of property. The judgment debt owed plaintiff must also be considered in evaluating plaintiff's demand for alimony and particularly defendant's ability to pay alimony. There may not be a double recovery from defendant.

VI
Part V of this opinion focuses solely on the right to a jury trial on counts three through six of plaintiff's complaint. Plaintiff's *30 jury trial demand also encompassed counts seven through eleven of her complaint, denominated "equitable claims."
Although plaintiff's notice of appeal encompassed an appeal from the decision striking her jury trial demand, plaintiff's brief on appeal focused solely upon the right to a jury trial for marital tort claims. Plaintiff's brief fails to assert any claim of error attributable to the motion judge's decision pertinent to her "equitable claims." Defendant's brief is also silent on that issue.
It is quite clear that plaintiff has no right to a jury trial on her claim that premarital real property titled solely in defendant's name should be included in the marital estate for equitable distribution purposes, by virtue of the concepts of transmutation of property, constructive/resulting trusts, implied contract, unjust enrichment, and quasi-contract. Those concepts are clearly equitable in nature, and as such, they should be presented solely to the court as the trier of fact. Boardwalk Properties, Inc. v. BPHC Acquisition, Inc., supra, 253 N.J. Super. at 527, 602 A.2d 733.

VII  SUMMARY
The component of the order striking plaintiff's demand for a jury trial on counts seven through eleven is affirmed. However, the portion of the order striking plaintiff's demand for a jury trial on counts three through six is reversed. A jury trial will be permitted on these claims, provided plaintiff's proofs satisfy the threshold requirements outlined in Part V of this opinion.
The component of the order striking all tortious claims occurring prior to June 30, 1992, based upon N.J.S.A. 2A:14-2, is modified. Plaintiff is barred from pursuing a claim for damages for assault and battery on any battery occurring prior to June 30, 1992, but she is permitted to assert a claim for battered woman's syndrome attributable to acts occurring after October 25, 1982, when plaintiff's prior counterclaim for divorce was dismissed with prejudice. Our modification of the motion judge's order is without prejudice to defendant's right to again move to strike plaintiff's *31 claim of continuous tort resulting in battered woman's syndrome, should plaintiff fail to amend her complaint to allege specifically the acts of continuous violence occurring after October 25, 1982, which she contends resulted in the condition described as battered woman's syndrome.
The component of the order limiting plaintiff's proofs on her claims for emotional distress, count four, and negligence, count six, to acts occurring after June 30, 1992 is modified. Plaintiff may produce proof of facts occurring prior to June 30, 1992, if deemed relevant to proving acts occurring after June 30, 1992. Plaintiff may not recover damages for any acts of emotional distress or negligence occurring prior to June 30, 1992.
SKILLMAN, J.A.D., concurring and dissenting.
I see no need for the creation of a new tort cause of action for "battered woman's syndrome." In addition, I would conclude that plaintiff failed to present any evidence that could justify postponing the accrual of her other tort causes of action. I agree with the trial court's conclusion that plaintiff is not entitled to a jury trial with respect to her remaining tort claims because those claims are ancillary and incidental to her divorce complaint. Therefore, I would affirm the challenged portions of the trial court's order in all respects.

I
To place the majority's sweeping pronouncements in proper perspective, it is appropriate at the outset to set forth the factual allegations that the majority has found sufficient to justify recognition of a new tort action for "battered woman's syndrome" and the postponement of accrual of plaintiff's tort claims. Those claims are set forth in four brief counts of plaintiff's complaint. The complaint's only allegation of a specific act of violence is the alleged assault and battery which occurred in March of 1972. The assault and battery count of the complaint also contains a broad conclusionary allegation that:

*32 The defendant has continually since March of 1972, attacked the plaintiff causing her on numerous occasions great physical and bodily injury. The last such beating having occurred in or about June of 1993.[1]
In addition, plaintiff alleges in the counts of her complaint seeking a divorce on the grounds of habitual drunkenness and extreme cruelty that defendant would frequently come home intoxicated in the middle of the night, and on those occasions would awaken plaintiff and act abusively towards her. This count also alleges that defendant was "threatening the plaintiff" and "throwing various objects around the house" when he became intoxicated one time in 1984. The fifth count of plaintiff's complaint, which the majority construes as plaintiff's "battered woman's syndrome" claim, simply incorporates the factual allegations of the prior counts of the complaint by reference and then broadly asserts:
The defendant's conduct against the plaintiff has been a continuous and unbroken wrong commencing in or about March of 1972 and continuing down until May of 1993. Said continuous course of conduct by the defendant has caused the plaintiff severe emotional and physical damage.
Defendant filed a motion seeking various relief, including the dismissal of all of plaintiff's tort claims, except for assault and battery, and the striking of "those causes of action ... which assert tortious acts which occurred on or before June 30, 1992 based upon the applicable statute of limitations." Although the parties filed voluminous briefs and certifications relating to this motion, plaintiff's certifications contained no factual allegations that could support a claim that she suffers from "battered woman's syndrome." In addition to reasserting the occurrence of the March 1972 assault and battery, plaintiff alleged:
(b) Throughout the marriage, on approximately two (2) occasions per month, on Friday nights, or early Saturday, the defendant would return home after drinking excessively. He would attempt to initiate sexual intercourse. He would try to *33 wake me up by turning on the lights, banging doors, pulling the sheets off the bed and by striking me with the flat of his hand.[2] He would pull my hair. He would throw things around the room. I experienced this, on average, at least twice a month for our entire marriage. He was out drinking with his friends every single Friday night.
(c) During these Friday night incidences he would call me "bitch" "C-nt," "whore," "f-ing son-of-a-bitch" and other vile names.
(d) These incidences would often cause me to flee the home to protect myself or avoid our children from hearing and trying to come to my rescue.
Although such allegations, if proven at trial, could support a divorce on the ground of extreme cruelty, N.J.S.A. 2A:34-2(c), they fall far short of what would be required to establish a case of battered woman's syndrome as described in State v. Kelly, 97 N.J. 178, 190-196, 478 A.2d 364 (1984). Plaintiff's certifications, which were not accompanied by any supporting medical evidence, also do not contain any allegation that might provide a foundation for a finding that she suffered from "insanity" during the marriage, as would be required to toll the period of limitations under N.J.S.A. 2A:14-21.
Therefore, even if it were appropriate for this court to create a new cause of action in tort for battered woman's syndrome, and to allow the tolling of the statute of limitations based on the existence of that condition, plaintiff's factual allegations fail to lay a factual foundation for a finding that she suffered from such a syndrome. Accordingly, I would dismiss the appeal on the ground that leave to appeal was improvidently granted. However, since the majority has used this appeal as a vehicle to endorse novel legal theories with potentially far-reaching consequences, I consider it necessary to reach the merits and to discuss those theories.

II
"It is inadvisable to create new causes of action in tort in advance of any necessity for doing so in order to achieve a just *34 result." Neelthak Dev. Corp. v. Township of Gloucester, 272 N.J. Super. 319, 325, 639 A.2d 1141 (App.Div. 1994). Consequently, this court should consider whether existing tort causes of action provide an adequate remedy for conduct that may result in battered woman's syndrome before undertaking to create any new cause of action.
Any person who is a victim of violence, or the threat of violence, may recover money damages for assault and/or battery. A person may be liable for battery if "he acts intending to cause a harmful or offensive contact ... or an imminent apprehension of such contact" and a "harmful" or "offensive" contact "directly or indirectly results." 1 Restatement (Second) of Torts §§ 13, 18 (1965). A person who acts with the same intent may be liable for assault even if no contact actually results if the victim is placed in "imminent apprehension" of a harmful or offensive contact. Id. at § 21. Consequently, any woman who is the victim of an act of battering, or a threat of battering, can bring a tort action against her assailant for each of those acts. Moreover, a battered woman would be entitled to recover not only for any economic losses resulting from those acts, such as medical expenses and lost wages, but also for pain and suffering and disability, see Schroeder v. Perkel, 87 N.J. 53, 66, 432 A.2d 834 (1981), which would include the psychological sequelae of any act of battering. Wilson v. Parisi, 268 N.J. Super. 213, 219-20, 633 A.2d 113 (App.Div. 1993).
The trial court's opinion in Cusseaux v. Pickett, 279 N.J. Super. 335, 343, 652 A.2d 789 (Law Div. 1994), upon which the majority relies, simply asserts, without any supporting explanation, that "the civil laws of assault and battery [are] insufficient to redress the harms suffered as a result of domestic violence." Although the majority's opinion likewise fails to explain why the law of assault and battery fails to provide adequate means of redress for the victims of domestic violence, it suggests that the creation of an independent tort of battered woman's syndrome would allow recovery in tort for "all acts of cruelty which occurred during the course of [the] marriage," (majority op. at 22, 663 A.2d at 119), *35 even if those acts do not involve any battering. Under this view, plaintiff could seek money damages for the alleged emotional distress and psychological harm resulting from the alleged occasions when defendant came home late at night in an intoxicated condition and verbally abused her.
However, the creation of a cause of action that allowed recovery for incidents of verbal abuse would extend marital tort liability to conduct that would not give rise to legal liability in other contexts. Mere verbal abuse or insult is not generally a basis for the imposition of tort liability. 2 Fowler V. Harper, et al., The Law of Torts § 9.2 (1986); Prosser on Torts § 12 at 59-60 (5th ed. 1984). As observed in a comment to the Restatement of Torts, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam." 1 Restatement (Second) of Torts § 46 comment d (1965); cf. Ward v. Zelikovsky, 136 N.J. 516, 529, 643 A.2d 972 (1994) (quoting Rodney A. Smolla, Law of Defamation § 6.12[9], at 6-54) ("[N]ame calling, epithets, and abusive language, no matter how vulgar or offensive, are not actionable" under the law of defamation). Moreover, even assuming that verbal abuse could be sufficiently outrageous and harmful to the target to give rise to a cause of action for intentional infliction of emotional distress, see Price v. State Farm Mut. Auto. Ins. Co., 878 F. Supp. 1567 (S.D.Ga. 1995); Jean C. Love, Discriminatory Speech and the Tort of Intentional Infliction of Emotional Distress, 47 Wash & Lee L.Rev. 123 (1990), our courts have established rigorous prerequisites for proving this cause of action:
Generally speaking, to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. Initially, the plaintiff must prove that the defendant acted intentionally or recklessly....
Second, the defendant's conduct must be extreme and outrageous. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Third, the defendant's actions must have been the proximate cause of the plaintiff's emotional distress. Fourth, the emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it." By circumscribing the cause of action with an elevated *36 threshold for liability and damages, courts have authorized legitimate claims while eliminating those that should not be compensable.
[Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 366-67, 544 A.2d 857 (1988) (citations omitted).]
The kind of verbal abuse that defendant allegedly directed at plaintiff, although certainly offensive, was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 366, 544 A.2d 857; see Price v. State Farm Mut. Auto. Ins. Co., supra; cf. Ruprecht v. Ruprecht, 252 N.J. Super. 230, 238, 599 A.2d 604 (Ch.Div. 1991) (holding that wife's eleven year secret adulterous affair with her employer failed "to reach the level of outrageousness necessary for liability under this tort."). In fact, serious verbal abuse, often reciprocal in nature, is a common feature of deteriorating marriages. Consequently, the verbal abuse that plaintiff ascribes to defendant could not provide the basis for a claim of intentional infliction of emotional distress.[3]
It is clear to me that we should not create a cause of action that would result in potential tort liability between domestic partners in a broader range of circumstances than apply in other contexts. Although close family relationships, such as those between a husband and wife or a parent and child, serve as primary sources of love, affection and support, the emotional significance of such relationships and the constant contact that occurs among family members who live together also produce various forms of tension, discord and verbal abuse. Verbal abuse between spouses is likely to be most frequent, and most nasty, when a marital relationship is deteriorating. As we noted in Peranio v. Peranio, 280 N.J. Super. 47, 56, 654 A.2d 495 (App.Div. 1995):
[T]he dissolution of a marriage is rarely a happy event. All parties suffer and even the most rational are hard pressed to avoid any emotional encounters.
*37 In my view, such emotional encounters within a marriage should not form a basis for the imposition of tort liability unless one of the parties engages in conduct that could support a claim for assault, battery or intentional infliction of emotional distress. See Merenoff v. Merenoff, 76 N.J. 535, 555, 388 A.2d 951 (1978) ("There is a range of activity arising in the course of a marriage relationship beyond the reach of the law of torts."). In fact, the creation of an overly expansive concept of tort liability in the marital setting would conflict with current statutory provisions that have reduced the significance of fault in matrimonial litigation, see Kazin v. Kazin, 81 N.J. 85, 92, 405 A.2d 360 (1979), and would unnecessarily complicate such litigation. Therefore, I would reject plaintiff's effort to gain recognition of a new tort action for battered woman's syndrome.

III
The majority opinion suggests that a primary objective of creating a new tort cause of action for battered woman's syndrome is to avoid the normal application of the statute of limitations to bar marital tort claims. If that is the underlying reason for the creation of this new tort, it is a classic case of the tail being allowed to wag the dog. If defendant's alleged marital misconduct could be properly characterized as "continuous" or if plaintiff's mental state could be shown to constitute "insanity," the running of the statute of limitations could be tolled regardless of whether plaintiff's cause of action were labeled assault and battery, intentional infliction of emotional distress, or the amorphous new tort of battered woman's syndrome. See Jones v. Jones, 242 N.J. Super. 195, 576 A.2d 316 (App.Div.), certif. denied, 122 N.J. 418, 585 A.2d 412 (1990); Twyman v. Twyman, 790 S.W.2d 819, 820-21 (Tex. Ct. App. 1990), rev'd on other grounds, 855 S.W.2d 619 (Tex. 1993). To state the point another way, it seems to me that the elements that a plaintiff must prove to establish a cause of action should be analyzed separately from the question whether the plaintiff has made the kind of showing required to toll the statute of limitations.
*38 Since I have already set forth my reasons for concluding that marital tort claims should be subject to the same substantive principles of tort liability as claims arising outside the marital setting, I turn to the question whether plaintiff has shown any basis for tolling the statute of limitations. Preliminarily, I note that we are not writing on a clean slate in applying the statute of limitations to marital torts. In holding that the statute of limitations barred a wife's recovery for a severe beating administered by her husband, the Court stated in Tevis v. Tevis, 79 N.J. 422, 431-33, 400 A.2d 1189 (1979):
In certain circumstances, the court has attempted to mitigate the sometimes harsh results arising from the inflexible application of [the statute of limitations] by invoking the "discovery" rule....
This rule is of no aid to plaintiff in the present case. She knew of her injuries and was simultaneously aware of their cause in the person of her husband at the moment of the assault and battery.... Plaintiff's cause of action accrued when she was battered....
The question remains as to whether other equitable considerations may relieve plaintiff of the onus of the statute of limitations....
Plaintiff apparently suffered substantial injuries but she was not incapacitated or prevented by her physical or mental trauma from pursuing her legal rights.... Even though defendant's conduct was grotesque and inexcusable, there is no claim that he defrauded plaintiff or that she relied upon any misleading or deceitful misrepresentation of his in forestalling civil redress.
Although Tevis did not consider the specific arguments plaintiff now advances for tolling the statute of limitations, I believe that Tevis should lead us to proceed with caution in considering any argument for postponement of the accrual of a marital tort.
A party who seeks to avoid the bar of a statute of limitations by invocation of the discovery rule or other comparable doctrine has the burden of proof. Lopez v. Swyer, 62 N.J. 267, 276, 300 A.2d 563 (1973). Consequently, such a party may not simply rely upon the allegations of the complaint in opposing a motion to dismiss but must instead present evidence in the form of affidavits, depositions, or exhibits to establish a prima facie basis for postponing accrual of the cause of action. See id. at 275, 300 A.2d 563. It is only when the plaintiff has met this threshold burden that the *39 court should conduct an evidentiary hearing to resolve contested factual allegations material to the issue of accrual. Ibid.
The majority acknowledges that "plaintiff has failed to present any medical, physical or psychological evidence to support her claim that she suffers from the medical condition labeled battered woman's syndrome" (majority op. at 18-19, 663 A.2d at 117). But the majority takes the position that plaintiff should be given an additional opportunity to present medical evidence that may justify postponement of the accrual of her cause of action, because "the trial court dismissed count five of plaintiff's complaint alleging `continuous wrong' not because plaintiff failed to present proof of her medical condition in response to defendant's motion, but because the decision in Cusseaux was not binding upon a court of concurrent jurisdiction" (majority op. at 19, 663 A.2d at 117). However, the majority's description of the trial court's rationale for dismissing all of plaintiff's pre-June 30, 1992 marital tort claims is incomplete. In fact, the trial court not only declined to recognize a new cause of action for battered woman's syndrome, but also squarely held that all marital tort claims for injuries that occurred more than two years before the filing of plaintiff's complaint were barred by the applicable two-year statute of limitations:
In my mind the issue that's raised here is the question of when does a statute of limitations bar tort claims arising out of a marital-type relationship? ... [M]y most basic conclusion is that the defendant's motion, based on the statute of limitations, should be granted and the plaintiff should be barred from pursuing claims for damages arising out of personal injuries that may have occurred prior to ... June 30, 1992.... The statute that we're dealing with makes it clear that a cause of action for damages arising out of personal injuries runs after two years. The case law makes it clear that the statute begins to run generally when the assault or the injury occurs. From that basic rule it's clear that two years after someone has been physically injured he or she is barred from proceeding with that cause of action.
The trial court then considered various exceptions to the normal operation of the statute of limitations, including not only "the concept of continuous wrong" but also "equitable tolling" and the "discovery rule." Although the trial court did not consider plaintiff's medical condition as a possible basis for tolling the limitations *40 period, this was only because plaintiff failed to present any medical evidence that would have required consideration of such a theory. Therefore, the trial court did not act prematurely in ruling that plaintiff's pre-June 30, 1992 claims are barred by the statute of limitations.
The majority's discussion of the question whether battered woman's syndrome is a continuous tort is confusing and contradictory. On the one hand, the majority states that "[w]e do not adopt the conclusion in Cusseaux that battered woman's syndrome is itself a continuous tort" (majority op. at 14, 663 A.2d at 114). On the other hand, the majority asserts that "to overcome the statute of limitations, it is imperative that the tortious conduct giving rise to the medical condition be considered a continuous tort" (majority op. at 14, 663 A.2d at 114). The majority never undertakes to explain how these seemingly inconsistent statements can be reconciled. Moreover, the majority later states that "[p]laintiff shall be entitled to sue her husband for damages attributable to his continuous tortious conduct resulting in her present psychological condition, provided she has medical, psychiatric, or psychological expert proof to establish that she was caused to have an inability `to take any action at all to improve or alter the situation.' Cusseaux, supra, 279 N.J. Super. at 341 [652 A.2d 789]" (majority op. at 18, 663 A.2d at 117). Therefore, it appears that despite its prior contrary statements, the majority views the newly created tort of "battered woman's syndrome" as a "continuous tort" for which there is no operative statute of limitations.
In support of this theory, the majority relies primarily upon two cases that involved the application of N.J.S.A. 2A:14-21, which provides that a cause of action shall not accrue if the aggrieved party is "insane." In Kyle v. Green Acres at Verona, Inc., 44 N.J. 100, 207 A.2d 513 (1965), the Court held that even though N.J.S.A. 2A:14-21 does not literally apply where an injured party becomes insane subsequent to the accident that is the subject of his complaint, a defendant may be foreclosed on equitable grounds *41 from invoking the statute of limitations if the defendant's wrongful acts were the cause of plaintiff's insanity. The Court also indicated that insanity "means such a condition of mental derangement as actually prevents the sufferer from understanding his legal rights or instituting legal action." Id. at 113, 207 A.2d 513. It was undisputed that the plaintiff in Kyle, who was "officially committed as `insane'" for a period of five years, id. at 102, 207 A.2d 513, qualified under this definition as insane.
In Jones v. Jones, supra, we held that the mental trauma resulting from a pattern of incestuous sexual abuse may constitute insanity under N.J.S.A. 2A:14-21, so as to toll the statute of limitations, if a plaintiff can demonstrate that she lacks "the ability and capacity, due to mental affliction allegedly caused by defendants' conduct, to assert her lawful rights." 242 N.J. Super. at 205, 576 A.2d 316. We concluded that the plaintiff's submission in opposition to the defendant's motion to dismiss, which included the treatment notes of her psychologist and the affidavit of another psychologist, id. at 201, 576 A.2d 316, raised genuine issues of material fact as to whether she suffered from such incapacity.
In contrast, plaintiff presented absolutely no evidence that she now suffers or has suffered in the past from the kind of mental affliction that could be found to constitute insanity. Plaintiff not only failed, as discussed in section II of this opinion, to allege acts of battering that could provide a factual foundation for a finding that she suffers from battered woman's syndrome, but also failed to submit any doctor's certification or report or any other medical evidence that she suffered from a "mental derangement" that was so disabling it would have prevented her "from understanding [her] legal rights or instituting legal action." Kyle v. Green Acres at Verona, Inc., supra, 44 N.J. at 113, 207 A.2d 513. Therefore, even assuming that under appropriate circumstances the condition of battered woman's syndrome could justify postponement of the accrual of a cause of action for assault, battery, or intentional infliction of emotional distress, plaintiff failed to present a prima facie case for postponing the accrual of her marital tort claims. *42 Cf. Davis v. Bostick, 282 Or. 667, 580 P.2d 544, 548 (1978) ("Designating a series of discrete acts, even if connected in design or intent, a `continuing tort' ought not to be a rationale by which the statute of limitations policy can be avoided.").

IV
I turn finally to the majority's conclusion that a party asserting a marital tort claim may be entitled to a trial by jury even though his or her claim is joined in a complaint for divorce. Where a claim is cognizable in equity, the court may adjudicate "ancillary and incidental" legal claims. Fleischer v. James Drug Stores, 1 N.J. 138, 150, 62 A.2d 383 (1948). Consequently, "an issue which is normally triable to a jury may be ancillary and incidental to the subject matter of the equitable jurisdiction, thus allowing the issue to be determined by the court without a jury." Apollo v. Kim Anh Pham, 192 N.J. Super. 427, 431, 470 A.2d 934 (Ch.Div. 1983), aff'd o.b., 224 N.J. Super. 89, 539 A.2d 1222 (App.Div. 1987); accord Boardwalk Properties, Inc. v. BPHC Acquisition, Inc., 253 N.J. Super. 515, 527, 602 A.2d 733 (App.Div. 1991). This inherent authority of a court of equity to adjudicate ancillary and incidental legal matters extends to tort claims for money damages. Apollo v. Kim Anh Pham, supra, 192 N.J. Super. at 431, 470 A.2d 934.
The trial court correctly concluded that plaintiff's tort claims are ancillary and incidental to the counts of her complaint seeking dissolution of the marriage, equitable distribution and support. The counts of plaintiff's complaint in which she asserts tort claims incorporate by reference and rely upon the same factual allegations as the divorce counts of her complaint. Indeed, the only specific factual allegations set forth in the tort counts of plaintiff's complaint that are not also set forth in the divorce counts relate to the alleged March 1972 assault and battery. Therefore, plaintiff's tort claims are "germane to [and] grow out of the subject-matter" of her equitable complaint for divorce. Fleischer v. James Drug Stores, supra, 1 N.J. at 150, 62 A.2d 383. Moreover, there is no indication that plaintiff "has sustained serious or significant permanent *43 physical or psychological damage" as a result of defendant's alleged post-June 30, 1992 marital torts or that "her injuries require complex medical proof" (majority op. at 28, 663 A.2d at 123);[4]cf. Zahorian v. Russell Fitt Real Estate Agency, 62 N.J. 399, 413, 301 A.2d 754 (1973). I see no need in deciding this appeal to express any opinion as to whether some marital tort claims joined in a complaint for divorce may be sufficiently independent of the allegations of the complaint for divorce that they should not be viewed as "ancillary and incidental," thereby preserving a plaintiff's right to a trial by jury.
For the foregoing reasons, I would affirm paragraphs one and six of the November 14, 1994 order in all respects.
NOTES
[1] See Lenore E. Walker, Roberta K. Thyfault and Angela Browne, Beyond the Juror's Ken: Battered Women, 7 Vt.L.Rev. 1 (1982).
[2] A similar analysis of the continuous tort theory is discussed in Twyman v. Twyman, 855 S.W.2d 619 (Tex. 1993), reversing Twyman v. Twyman, 790 S.W.2d 819 (Tex. Ct. App. 1990).
[3] In 1991, N.J.S.A. 2C:25-1 to -16 were repealed, and N.J.S.A. 2C:25-17 to -33 were enacted in their place. N.J.S.A. 2C:25-18 contains the same language that was contained in N.J.S.A. 2C:25-2.
[4] Were plaintiff proceeding without a jury, the court would not be required to conduct a pretrial hearing. The testimony can be presented during the entire divorce proceeding; however, the court must determine whether the statute of limitations should be tolled before rendering a decision on the merits of the cause of action and awarding damages. Lopez v. Swyer, supra, 62 N.J. at 275 n. 3, 300 A.2d 563.
[5] In 1980, plaintiff's counterclaim for divorce was predicated upon the physical assault in March 1972, and on a separate assault which allegedly occurred in December 1978. Plaintiff's present complaint for divorce refers to the assault in March 1972, but it does not specifically mention the alleged assault in December 1978.
[6] The parties separated December 31, 1978. They reconciled in July 1982. If the tortious act of December 28, 1978 proximately caused battered woman's syndrome, the filing of a counterclaim for divorce predicated in part upon that beating demonstrated that plaintiff as of the date of filing in September 1980 had the ability to take action to "improve or alter" her martial difficulties. Cusseaux, supra, 279 N.J. Super. at 344, 652 A.2d 789. We also note that plaintiff's complaint fails to specifically allege the act of assault on December 28, 1978.
[1] When plaintiff was deposed, she indicated that she had no recollection of any specific incident of physical abuse by defendant at any time from January 1993 until the parties separated in October 1993. Although plaintiff was not deposed until after entry of the order that is the subject of this appeal, we granted defendant's motion to expand the record to include the transcript of this deposition.
[2] When plaintiff was deposed with respect to the period after June 30, 1992, she did not identify any incident in which defendant struck her or inflicted any form of physical injury upon her.
[3] If plaintiff can show any act of battering or threat of battering, she would of course be entitled to recover under the law of assault and battery.
[4] As previously noted, plaintiff has already been deposed.